IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01329-CMA-BNB

GENE E. AVILES,

Applicant,

v.

LOU ARCHULETTA, Warden, L.C.F., and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

Respondents.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter is before me on the **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** (the "Application"), filed by Gene Aviles (the "petitioner") on July 10, 2006 [Doc. #2].  The respondents filed an Answer on August 17, 2006 [Doc. #12], and the petitioner filed Applicant's Traverse to Respondent's Answer on September 20, 2006 [Doc. #18] (the "Traverse").  For the following reasons, I respectfully RECOMMEND that the Application be DENIED.

## I.  THE LAW

This Court may review the petitioner's application for writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  An application cannot be granted unless it appears that the petitioner has exhausted available state remedies.  28 U.S.C. § 2254(b)(1).

If a petitioner exhausts his available state remedies, his application may be granted only if the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Factual determinations made by the state court are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Generally, if a petitioner fails to exhaust available state remedies, a federal court should dismiss the application without prejudice so that the state remedies may be pursued. Demarest v. Price, 130 F.3d 922, 939 (10th Cir. 1997). The federal court, however, should first consider whether the petitioner would be able to raise the unexhausted claims in the state court. Id.

If the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, the petitioner's claims are procedurally defaulted for purposes of federal habeas corpus relief. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991). The federal court may not consider issues raised in a habeas corpus petition that have been defaulted in state court on an independent and adequate procedural ground unless the petitioner can show cause for the default and actual prejudice as a result of the alleged violation of federal law or can demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. 722, 750 (1991). The determination of cause, prejudice, and fundamental miscarriage of justice are matters of federal law. Demarest, 130 F.3d at 941.

## II. BACKGROUND

The petitioner summarizes the facts of the underlying criminal case as follows:

On the evening of February 22, 1997, Christopher Seekamp was shot in the parking lot at the Southwest Plaza Mall in Jefferson County, Colorado. His injury proved fatal when the bullet entered his abdomen and severed his aorta.

Alex Ache worked at a custom T-shirt shop in the mall. Mr. Aviles and a companion, Mr. Malone, came into the store. Mr. Malone ordered a custom T-shirt and he designed it. On a tablet, Mr. Malone "began what I assumed he wanted to have on the shirt." Mr. Ache said that the handwriting on the design was his own and that of Mr. Malone. Mr. Malone wanted the insignia to read "Wanted--skinny nigger 4 Harley belt drive." Mr. Ache said that Mr. Aviles did very little talking and that the only input he gave was to the arrangement of the lettering around the logo. Mr. Malone paid for the T-shirt. Because it was going to take thirty minutes to complete the project, Mr. Ache told Mr. Malone to come back later.

Mr. Aviles and Mr. Malone returned before the shirt was ready, and Mr[.] Ache told them to come back in five minutes. As they left Mr. Ache noticed that between ten and fifteen teenagers "started gathering around these two men." Mr. Ache said that two fairly tall African-Americans dressed in blue clothing stood out. One displayed a blue bandana and said to Mr Aviles and Mr. Malone as they left the store, "this is respect." The men returned to the store a third time. Mr. Ache put the shirt in a bag and gave it to Mr. Malone, who pulled it out of the bag and held it up "as if he was showing the T-shirt to someone." Mr. Malone was not waving it and Mr. Aviles did nothing to draw attention to the shirt. At this point, one of the two African-American men shouted into the store and demanded to see the shirt. Mr. Ache said that neither man responded and that Mr. Malone just stood there, holding the shirt, doing nothing to further expose it. Mr. Aviles and Mr. Malone left the store; the crowd that had gathered pursued them.

Steven Richardson, a long-time gang member, convicted felon, and friend of Mr. Seekamp, testified to his version of the events that preceded the shooting. Richardson's testimony was frequently contradicted and he admitted that he had lied repeatedly to the police. Richardson claimed that when he met Mr. Seekamp at the

mall the latter was dressed in blue, symbolic of his affiliation with the Crips gang. He appeared angry and was accompanied by Steve Andreozzi. Seekamp and Andreozzi were standing in front of the T-shirt store when Mr. Aviles and Mr. Malone exited the store next to the T-shirt shop. Richardson noticed that they were wearing sportswear associated with the Bloods gang. Richardson claimed that gang signs were exchanged.

Mr. Seekamp began to flash gang signs and "mad-dogged" Mr. Aviles and Mr. Malone. Mr. Aviles and his friend did not respond and walked into the T-shirt store. They stood outside and waited for them. When Mr. Aviles and Mr. Malone came out of the store, Richardson challenged Mr. Aviles to a fight. Mr. Aviles walked away but was pursued. Richardson saw that others were following them. He admitted that the group looked "big" and "threatening" and that it followed Mr. Aviles and Mr. Malone to the mall exit. He stated that he, Seekamp, and Andreozzi, were "ready to fight." They and others harassed and pursued Mr. Aviles and Mr. Malone outside into the parking lot.

Mel West testified that he saw the group following Mr. Aviles and Mr. Malone. He stated that when Mr. Aviles displayed a gun, Mr. Seekamp turned back toward the entrance to the mall and the group scattered. Mr. Aviles continued into the parking lot but Mr. Seekamp turned around and went back out both doors hitting one door with one hand and swinging the door open with great force, making what Mr. West described as "a very loud bang." Mr. Aviles turned, shot one time, and ran.

Deputy Grant Whitus testified that on the night of the shooting he searched the area near the mall and found Mr. Aviles hiding in a dumpster under a large cardboard box. He struck the box with his baton and Mr. Aviles emerged, stating "I give up." Deputy Whitus agreed that Mr. Aviles appeared frightened and, upon being placed in the patrol car, he began to cry.

*Answer*, Ex. E, pp. 3-6 (internal citations omitted).

A jury found the petitioner guilty of first degree murder and a crime of violence. Id. His convictions were upheld on direct appeal by the state appellate court. *Application*, first

consecutive attachment; *Answer*, Ex. D.  The state supreme court denied the petitioner's petition for a writ of certiorari.  *Answer*, Ex. F.

On January 18, 2001, the petitioner filed a *pro se* motion for postconviction relief pursuant to Rule 35(c), Colo. R. Crim. P., alleging ineffective assistance of trial counsel. *Application*, third consecutive attachment, p. 1.  He was informed that the motion was not received by the court, and he filed another copy of the motion on April 25, 2001.  Id.  The district court denied the motion on January 23, 2002, finding that the claims failed under Strickland v. Washington, 466 U.S. 668 (1984).  Id. at p. 2.  The court also found that the petitioner was not entitled to a hearing or appointment of counsel.  *Application*, seventh consecutive attachment, p. 1;  *Answer*, Ex. P, p. 1.  The petitioner appealed the denial of his postconviction motion.  *Answer*, Ex. G.  The appellate court affirmed the district court's decision.  *Application*, fourth consecutive attachment*; Answer*, Ex. J.  The supreme court denied the petitioner's petition for a writ of certiorari.  *Application*, fifth consecutive attachment*; Answer*, Ex. L.

The petitioner filed a second motion pursuant to Rule 35(c) wherein he alleged ineffective assistance of appellate counsel for failing to raise federal constitutional issues in his direct appeal.  *Application*, seventh consecutive attachment, pp. 1-2; *Answer*, Ex. P, pp. 1-2.  The appellate court affirmed the district court's denial of the motion.  *Application*, seventh consecutive attachment; *Answer*, Ex. P.  The supreme court denied the petitioner's petition for a writ of certiorari.  *Application*, eighth consecutive attachment; *Answer* Ex. R.

The Application contains six claims.  In Claim One, the petitioner alleges that he was denied a fair trial in violation of the Fourteenth Amendment when the trial court allowed a tee

shirt to come in as res gestae evidence "stating that [he] held racist beliefs and that this was a possible motivation for [] killing the victim." *Application*, p. 5.

Claim Two alleges that the petitioner was denied a fair trial in violation of the Fourteenth Amendment when the trial court excluded the following exculpatory evidence: (a) the petitioner's statement that "it was self defense"; (b) evidence that the petitioner's friend purchased another racially derogatory tee shirt a month after the shooting; and (c) testimony of witnesses regarding the demeanor of the crowd at the mall. Id. at p. 6.

Claim Three alleges that the petitioner was denied a fair trial in violation of the Fourteenth Amendment when the trial court refused two of the plaintiff's tendered instructions and submitted a jury instruction which required the plaintiff to prove he was not the initial aggressor. Id.

In Claim Four, the petitioner alleges that the evidence was insufficient to convict him on a charge of first degree murder in violation of the Fourteenth Amendment. Id. at p. 6A.

Claim Five alleges that the petitioner's trial counsel was ineffective for (a) failure to object to the introduction of a racial slur contained on a tee shirt on First Amendment freedom of speech grounds; (b) failure to object to the introduction of the tee shirt into evidence; and (c) failure to investigate and obtain an expert witness on gangs. Id. at pp. 6A-6B.

Claim Six alleges that the petitioner was not provided with assistance of counsel for his first Rule 35(c) motion in violation of his due process rights. Id. at p. 6B.

# III. ANALYSIS

## A. Claim Two

I address Claims Two and Five first because the background facts are helpful in understanding the allegations of Claim One. Claim Two alleges that the petitioner was denied a fair trial in violation of the Fourteenth Amendment when the trial court excluded the following: (1) the petitioner's statement upon apprehension that he acted in self defense; (2) evidence that the petitioner's friend purchased another racially derogatory tee shirt a month after the shooting;[1] and (3) testimony of witnesses at the mall regarding the demeaner of the crowd at the mall. Id. at p. 6.

The petitioner presented this claim to the state courts. *Answer*, Ex. A, p. 21; Ex. E, p. 8. The respondents concede that this claim was exhausted in the state courts. *Answer*, p. 15. Therefore, I may grant the Application as to this claim only if the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

A criminal defendant's right to present evidence in his own defense is rooted in the Sixth Amendment's compulsory process clause and the Fifth and Fourteenth Amendments' guarantee of due process. Richmond v. Embry, 122 F.3d 866, 871 (10th Cir. 1997). When presenting evidence at trial, "the defendant must comply with established rules of evidence and procedure

---

[1]Claim Two states that the tee shirt was purchased "a month prior." Id. at p. 6. However, it is clear from the briefs that the petitioner is referring to a tee shirt that was purchased a month after the shooting. *Answer*, Ex. A, pp. 19-24; Ex. E, pp. 8-10.

as required by the state 'to assure both fairness and reliability in the ascertainment of guilt and innocence.'" Id. at 872-73 (quoting Chambers v. Mississippi, 410 U.S. 284, 302 (1973).  The state may not, however, "arbitrarily deny a defendant the ability to present testimony that is relevant and material, and vital to the defense."  Id. at 873 (internal quotations omitted) (quoting United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982).

## 1.  Self-Defense Statement

At trial, the prosecution conducted a direct examination of Grant Whitus, the patrol officer who found the petitioner hiding in the trash dumpster.  *Trial Transcript*, Vol. XII, pp. 139-151.  Officer Whitus testified that after the shooting he searched the trash cans around the mall in an attempt to find the petitioner.  Id. at p. 143.  He further testified that one particular dumpster contained a large furniture box which did not move when he pushed it with his baton, so he hit the box with his baton several times.  Id. at p. 146-47.  The prosecutor asked him if someone emerged from the box after he hit it with his baton.  Id. at p. 147.  Officer Whitus replied that he heard a voice from the box say "I give up."  Id. at pp. 147-48.  The prosecutor said, "Deputy, I'm not asking you what was said, I'm asking you, did someone emerge from the box?"  Id. at p. 148. Officer Whitus responded affirmatively.  Id. at p. 148.

After the prosecutor finished his direct examination of Officer Whitus, he requested a bench conference.  Id. at p. 151.  At the bench conference, the defense attorney asserted that after the petitioner said, "I give up," he stated, "It was self-defense."  Id. at p. 152.  The defense attorney argued that on cross-examination she should be able to elicit from Officer Whitus the petitioner's second statement under the rule of completeness.  Id.

In response, the prosecutor argued that the petitioner's second statement was not made contemporaneously with the first statement, and the first statement was not offered for the truth of the matter. Id. at 153-54. He further argued the defense was trying to admit the second statement to prove the truth of the matter and, therefore, the second statement must be precluded as self-serving hearsay. Id. at 154.

The trial judge asked Officer Whitus if he would have testified to any other statements made by the petitioner as he was being removed from the trash container. Id. at p. 156. The officer answered no, the petitioner made only the two statements, and he did not make the second statement until he was placed on the ground and handcuffed. Id. The trial judge then ruled that the second statement could not be admitted under the rule of completeness because it was separate from the first statement and was made under separate circumstances. Id. at p. 157. He determined that "the door had not been opened" to allow a hearsay statement that was not covered by any exception to the hearsay rule. Id.

Defense counsel interjected that at a preliminary hearing, Officer Whitus had testified that the self-defense statement was made as the petitioner was coming out of the covering. Id. at pp. 158-59. The trial court found that regardless of the difference in timing, the second statement was separate and was not necessary to complete the first statement. Id. at p. 159.

The state appellate court upheld the trial court's exclusion of the petitioner's statement that he acted in self-defense:

> First, we find no error by the court in excluding defendant's statement that he acted in self defense.
>
> Defendant filed a pre-trial motion to admit his statement, "It was self-defense," as an excited utterance. The court did not rule on

the motion at the time and, instead, reserved its ruling until the issue arose at trial.

During direct examination by the prosecution, the arresting officer who discovered defendant hiding in a dumpster after the shooting testified as follows:

Q: After you hit the box four or five times, did someone emerge from the box?

A: Yes. I heard a voice from the box say, "I give up."

Q: Deputy, I'm not asking you what was said, I'm asking you, did someone emerge from the box?

A: Yes.

Prior to cross-examination, a bench conference was held on the admissibility of defendant's additional statement, "It was self-defense." Defendant contended at trial, as he does on appeal, that the statement was admissible under either the "rule of completeness" doctrine or CRE 106 because the prosecution opened the door with the officer's testimony. However, defendant did not re-argue that the statement qualified as an excited utterance.

Because it was not raised at trial, the court did not analyze the statement as an excited utterance. However, the court's failure to analyze this issue under CRE 803(2) does not require reversal here, nor does the court's exclusion of the statement under CRE 106 and the rule of completeness.

Defendant's theory at trial was self-defense, the jury was instructed on that theory, and defense counsel argued self-defense during closing argument. Thus, defendant's excluded statement was cumulative, and the error excluding it, if any, was harmless.

*Application*, first consecutive attachment, pp. 4-5; *Answer*, Ex. D, pp. 4-5 (citation omitted).

The trial court did not arbitrarily deny admission of the petitioner's second statement; the statement of self-defense was excluded because it was hearsay, it was not admissible under an exception to the hearsay rule, and it was not appropriately admitted under the rule of

10

completeness. The court's decision is supported by the record, and the rules of evidence relied upon by the trial judge are established state rules of evidence which are required to ensure the reliability of evidence admitted at trial. The appellate court determined that the trial court properly excluded the petitioner's second statement. The state courts' determination of this matter is not contrary to the petitioner's Fourteenth Amendment right to due process or his Sixth Amendment right to compulsory process. Taylor v. Illinois, 484 U.S. 400, 410 (1988) (stating that the Sixth Amendment does not give a defendant an "unfettered right to offer testimony" that is inadmissible under standard rules of evidence); Richmond, 122 F.3d at 871-72 (stating that a defendant must comply with established rules of evidence in presenting testimony).

### 2. Purchase of Identical Tee Shirt One Month After Shooting

The appellate court also upheld the trial court's exclusion of evidence that the petitioner's friend purchased a tee shirt with the same racially offensive wording one month after the shooting. The clerk on duty at the time of the original purchase, Mr. Ache, testified that both the petitioner and his friend participated in the design of the tee shirt. *Record* Vol. X, pp. 90-92, 113, 131, 156. Specifically, he testified that both men participated in the discussion about which picture to put on the tee shirt and how to arrange the lettering of the tee shirt around the picture on the shirt. Id. During cross-examination of Mr. Ache, defense counsel attempted to elicit testimony about an incident that occurred one month later. Id. at p. 150. The prosecutor objected on the grounds of relevance. Id. A bench conference was held off the record, and the evidence was not introduced. Id. at p. 151.

A subsequent bench conference was held on the record during which defense counsel made an offer of proof regarding the testimony she would have elicited from Mr. Ache. Id. at p.

251.  She stated that "Mr. Ache would testify that approximately a month after the shooting Chris Malone came back into the store by himself and reordered the identical tee shirt that is currently in evidence at this trial."  Id.  She argued that the second purchase was relevant because it rebutted "the district attorney's argument that this shirt was something that both Mr. Aviles and Mr. Malone wished to acquire."  Id. at pp. 251-52.  The trial judge stated:

> As to the sale of the second tee shirt, the Court did determine that that did not have relevance and if it has relevance it is so extremely strained that the Court would deny it under 403.  That some other person purchased an identical shirt 30 days later does not add to the evidence before the Court as to whether or not this defendant is in anyway involved in the purchase of the tee shirt that's been introduced into evidence here.  And if it does have relevance it is so extremely strained that it should be barred under Rule 403 but the Court is finding it does not have relevance.

Id. at p. 256.

The state appellate court determined that the evidence was not relevant to the issue of whether the petitioner held racist beliefs:

> Defendant next contends the court erred in precluding evidence that defendant's friend purchased a T-shirt with the same racially offensive wording one month after the shooting.  Again, we disagree.
>
> At trial, as discussed above, the prosecutor presented evidence that insinuated defendant held racist beliefs based on his involvement in purchasing a T-shirt evincing a racist message.  Defendant attempted to discredit that evidence by eliciting testimony that defendant's friend returned to the store alone and purchased a shirt of identical design one month after the shooting.  The trial court sustained an objection by the prosecution and excluded the evidence, finding it irrelevant under CRE 403.
>
> Under CRE 403, a trial court has discretion to exclude evidence that is irrelevant, cumulative, or would result in unreasonable delay or waste of time.  In our view, the trial court's ruling on this

evidence about the actions of someone other than defendant weeks after the shooting was a proper exercise of discretion.

*Answer*, Ex. D, p. 6.

A criminal defendant's right to present a defense is not without limits:

> The defendant's presentation of evidence is constrained by the twin prongs of relevancy and materiality. Simply stated, a criminal defendant does not have a constitutional right to present evidence that is not relevant and not material to his defense. See id. (citing Washington v. Texas, 388 U.S. 14, 16, 87 S. Ct. 1920, 18 L. Ed.2d 1019 (1967); Roviaro v. United States, 353 U.S. 53, 63, 77 S. Ct. 623, 1 L. Ed.2d 639 (1957); United States v. Begay, 937 F.2d 515, 523 (10th Cir.1991)).

United States v. Solomon, 399 F.3d 1231, 1239 (10th Cir. 2005).

The record demonstrates that the petitioner participated in the purchase of the original tee shirt. The trial court's decision to exclude on relevancy grounds evidence that his friend subsequently purchased an identical tee shirt is not contrary to Solomon because the subsequent purchase is not relevant to whether the petitioner participated in the original purchase.

### 3. Lay Opinion Testimony

The petitioner asserts that the trial court impermissibly precluded testimony of a witness, Justin Murphy, as to the tension and demeanor of the crowd at the mall.[2] During direct examination by the defense, Mr. Murphy testified that he had come to the mall around the time of the shooting to "hang out with friends." *Trial Transcript*, Vol. XIII, p. 9. He testified that he saw a group of at least 30 people, including the victim, "following a couple of guys." Id. at p.

---

[2]In his Application, the petitioner refers to "witnesses." *Application*, p. 6. He does not identify the witnesses by name. Id. The petitioner presented this claim to the state courts as a challenge to preclusion of the testimony of only one witness, Justin Murphy. *Answer*, Ex. A, p. 24. Therefore, to the extent the petitioner is attempting to assert that the trial court excluded testimony from witnesses other than Mr. Murphy, he has not exhausted the claim as to other witnesses.

10.  Two of his friends were in the group.  Id.  He stated that his friends were "eager and

excited," id. at pp. 11-12, but he was not permitted to testify as to what his friends said to him

because the defense had not laid a foundation for any hearsay exception.  Id.

Defense counsel then asked:

> Based on what you observed, after you had the chance to see [your
> friends], what did you think based on what you observed and what
> you were seeing, what did you think was going to happen[?]

Id. at p. 12.

The prosecutor objected that the question was overbroad.  Id.  After a bench conference,

the court sustained the objection.  Id. at p. 13.  Defense counsel later explained that she wanted

to ask Mr. Murphy his lay opinion of "what he thought the intent of that group was based not on

any telepathy but based on what the group was doing, the tone of the group, how the group was

moving, things which are his perceptions."  Id. at pp. 95-96.  The trial judge explained:

> It seems inappropriate to me to simply say that because someone
> has observed something and they therefore have an opinion based
> upon their perception that in all circumstances they'll be allowed
> to give that opinion.  If that were the rule then every witness
> here could have given their opinion about what these facts mean, and I
> think that is just inappropriate and it's not what is intended by Rule
> 701.  The witnesses can tell this jury what they saw, counsel can
> argue to this jury the meaning of what these witnesses say they
> saw, and the jury can make their determination of the facts.
>
> Based upon that evidence and those arguments I don't believe it
> would have been particularly helpful to this jury to hear what
> someone else had to say either about the tenor of this crowd or the
> fact that the conduct of these parties didn't cause them to believe
> that someone was going to be killed which is the objection made
> by the defense.
>
> So the Court did deny the opportunity to ask Mr. Murphy his
> opinion as to what was the meaning of the conduct that he had
> observed in the mall.

Id. at pp. 100-101.

The appellate court upheld the trial court's exclusion of the lay opinion testimony:

> Defendant also contends the court erred in excluding lay opinion testimony regarding the demeanor of the crowd at the mall where the shooting occurred. We are not persuaded.
>
> Determination whether a witness may render a lay opinion pursuant to CRE 701 is a question for the trial court, and that determination is not subject to reversal unless clearly erroneous.
>
> Here, during direct examination of a defense witness, defense counsel sought to elicit the witness' opinion of what he perceived was going to happen based on the crowd's behavior, but the prosecution objected. Defense counsel proffered for the record that she intended to question the witness regarding "tone of the group, how the group was moving, things which are [the witness'] perceptions." Concluding that the witness' opinion relating to the crowd's behavior would not be helpful to the jury, the court sustained the objection. However, it did not prohibit the witness from testifying as to his objective observations of the crowd or its behavior.
>
> In People v. Jones, 907 P.2d 667 (Colo. App. 1995), a division of this court reversed the trial court's decision to exclude lay opinion testimony. However, in Jones, the division concluded that "the fact that the witness observed most of the altercation, and most particularly the beginning, establishe[d] an adequate foundation for her testimony summarizing or concluding as to what was happening."
>
> The witness at issue did not observe the start of the confrontation here. He came upon the scene toward its final stages, and thus, there was not a sufficient foundation for his opinion as to what he perceived was going to occur next. Hence, we perceive no error in the court's ruling.
>
> Additionally, inasmuch as several other witnesses, called by both the prosecution and defense, testified as to their observations and the demeanor of the crowd, the testimony sought by defense counsel from this particular witness was cumulative. Hence, the testimony was properly excludable on this basis also.

*Answer*, Ex. D, pp. 6-8 (citations omitted).

The court found that the witness had not observed the beginning of the confrontation and, therefore, a sufficient foundation did not exist for his opinion as to what would occur next. The petitioner does not dispute that the factual determinations made by the court. A defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." Taylor v. Illinois, 484 U.S. 400, 410 (1988). The exclusion of Mr. Murphy's opinion testimony is not contrary to Taylor.

The state courts' resolution of these issues was not contrary to, nor did it involve an unreasonable application of, federal law. The petitioner offers no clear and convincing evidence to rebut the factual determinations of the state court. Therefore, I find that the state courts' resolution resulted in a decision that was based on a reasonable determination of the facts in light of the evidence presented, 28 U.S.C. § 2254(d), and I find no basis to grant the Application as to Claim Two.

**B.   Claim Five**

Claim Five alleges that the petitioner's trial counsel was ineffective based on failure to (a) object to the introduction of a racial slur contained on the tee shirt on First Amendment freedom of speech grounds; (b) object to the introduction of the tee shirt into evidence on the basis that the prosecution did not establish the offer of proof as to its admissibility; and (b) obtain an expert witness on gangs. Id. at pp. 6A-6B. The petitioner presented this claim to the state courts in his first motion for post conviction relief. *Answer*, Ex. G, pp. 11-21; Ex. K, pp. 11-12. Therefore, this claim is exhausted and the Application may be granted as to this claim only if the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an

16

unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

The applicable federal law on this issue is clearly established. When reviewing a claim for ineffective assistance of counsel, the court starts with the presumption that counsel's conduct was constitutionally effective. Strickland v. Washington, 466 U.S. 668, 690 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689.

To prevail on a claim for ineffective assistance of trial counsel, a habeas petitioner must affirmatively show (1) that counsel's performance was deficient or, in other words, "fell below an objective standard of reasonableness," and (2) that counsel's errors prejudiced petitioner, that is to say "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687-88. Because the purpose of the Sixth Amendment's guarantee to counsel is to ensure that a criminal defendant receives a fair trial, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." Id. at 691.

### 1. Admission of the Tee Shirt

Prior to trial, the court heard the petitioner's motion in limine to exclude admission of the tee shirt. *Record*, Vol. IV, pp. 29-31. The prosecution made an offer of proof that the operator of the tee shirt shop would testify the petitioner and his friend, Mr. Malone, entered the tee shirt shop together; collaborated on the design of the tee shirt; and Mr. Malone held the tee shirt so that the victim could see it. The prosecution argued that the tee shirt is the res gestae of the entire event because it started the confrontation between the victim and the defendant. Id. at pp. 31-34.

The court agreed and denied the motion in limine. Id. at pp. 41-45. In denying the motion, the court stated:

> The Court has heard the arguments of counsel on this motion in limine number one, defense motion 20. It's the People's position based upon their statements to the Court that this evidence is not 404(b) evidence but is in fact res gestae evidence. The case they have cited to the Court, People versus Quintana, indicates that if evidence is in fact res gestae then it is not subject to the 404(b) analysis. People have suggested to the Court that their evidence will show that this defendant and Mr. Malone together ordered this shirt with the racial epitaph on it; that he participated in discussion of the contents of the shirt, that he was present and engaged in conduct which could have showed approval when the shirt was displayed, and People further argued to the Court that that evidence is -- that their evidence is that that is the beginning of the confrontation between the group which included victim and the two people which included defendant. As such the Court finds that this evidence is linked in time and circumstances with the crime that is alleged in this case. It's linked in time because according to the People's statement to the Court this is when the confrontation occurred between these two groups and the shooting then is a culmination of that confrontation. So I don't believe that that conduct with the shirt and defendant's association with it can be separated from the integral facts and circumstances surrounding the circumstances of this alleged crime.

<u>Id.</u> at pp. 41-42.

The petitioner challenged this ruling on direct appeal. *Answer*, Ex. A, pp. 14-19. The appellate court upheld the trial court as follows:

> Defendant first contends the trial court erred by admitting evidence of his purported racist beliefs as <u>res</u> <u>gestae</u> evidence of the shooting incident. We disagree.

> In a motion in limine prior to trial, defendant attempted to exclude evidence that, while at the mall before the shooting, he participated in the design and purchase of a T-shirt that contained a word that is especially offensive to African-Americans. The prosecution made an offer of proof that the store clerk would testify that both defendant and his friend participated in the design and purchase of the T-shirt, and that defendant's friend held up the shirt in view of the victim, an African-American, while defendant laughed and made "acknowledging gestures."

> Following the offer of proof, the prosecution argued that the T-shirt evidence constituted <u>res</u> <u>gestae</u> evidence because it showed defendant held racist beliefs; it provided motive for the shooting of the victim; and it led to subsequent events including objectionable language, obscene gestures, and verbal threats, culminating in the victim's shooting death.

> The trial court ruled, based on the offer of proof, that the evidence was <u>res</u> <u>gestae</u> evidence, but it further ruled that if the evidence at trial did not support this finding, a mistrial might be warranted.

> Absent a showing of an abuse of discretion, a trial court's determination on the admissibility of evidence will not be reversed.

> <u>Res</u> <u>gestae</u> evidence is matter incidental to the main fact and explanatory of it, including acts and words which are so closely connected therewith as to constitute a part of the transaction, and without knowledge of which the main fact might not be properly understood.

> Evidence of other acts that is not extrinsic to the offense charged, but is part of the criminal episode or transaction with which the defendant is charged, is admissible to provide the fact-finder with a

full and complete understanding of the events surrounding the crime and the context in which the charged crime occurred.

To be admissible, such evidence must be relevant and its probative value must not be substantially outweighed by the danger of unfair prejudice. It is within the trial court's discretion to determine whether the prejudicial effect of proffered evidence outweighs its probative value.

*In our view, the T-shirt evidence provided the jury with a fuller understanding of the events leading up to the shooting, and accordingly, we agree with the trial court that it constituted res gestae evidence.* However, after the store clerk testified regarding the T-shirt, defendant did not object, nor did he move for a mistrial on the grounds that the evidence failed to support the court's earlier ruling admitting the evidence. Accordingly, we review any error under the plain error standard.

Under the plain error standard, defendant must demonstrate that the error so undermined the fundamental fairness of the trial that it cases serious doubt on the reliability of the verdict.

Defendant has not carried his burden to so demonstrate here, and thus, even if the evidence was not properly characterized as part of the res gestae, the court's admission of that evidence did not rise to the level of plain error.

*Answer*, Ex. D, pp. 1-4 (internal quotations and citations omitted) (emphasis added).

Thus, both the trial court and the appellate court on direct appeal determined that the tee shirt was properly admitted as res gestae evidence.

In upholding the trial court's denial of the petitioner's Rule 35(c) motion alleging ineffective assistance of counsel, the state appellate court, citing Strickland, determined that the petitioner's claims of ineffective assistance were without merit. The court first addressed the petitioner's arguments regarding the tee shirt:

Defendant first asserts his trial counsel was ineffective when she failed to object to the admission of evidence related to a T-shirt bearing a racial slur. We discern no error.

Before trial, defense counsel filed a motion in limine objecting to admission of evidence that defendant designed, purchased, and displayed the T-shirt in the victim's line of sight just prior to the confrontation. The trial court denied defendant's motion based on the prosecution's offer of proof regarding the T-shirt store clerk's anticipated testimony. The court ruled that the evidence was admissible as res gestae evidence showing defendant held racist beliefs which led to the escalating events, culminating in the shooting of the victim, and also provided a motive.

On direct appeal, a division of this court initially agreed with the trial court that the T-shirt evidence constituted res gestae evidence. With respect to defense counsel's failure to object or seek a mistrial after the store clerk testified, the division further observed that even if this evidence were not res gestae, defendant had not shown plain error.

We are not convinced by defendant's contention that his counsel was ineffective for failing to object to the admission of the T-shirt evidence on First Amendment grounds. The issue in this case was not defendant's right to own or wear the T-shirt; rather, the evidence was used to provide the jury with context as to the events preceding the shooting. Thus, counsel's failure to object to the admission of the evidence on First Amendment grounds did not constitute ineffective assistance.

In a related argument, defendant asserts that his counsel was ineffective for failing to object to the T-shirt evidence on grounds that the store clerk's testimony did not support the prosecution's offer of proof. However, the testimony of the T-shirt store clerk supported the trial court's ruling and the related offer of proof. Thus, even if defendant could prove that his trial counsel's failure to object to the admission of the T-shirt evidence for lack of foundation fell below the level of reasonably competent assistance, defendant could not prove that he was prejudiced.

Moreover, we note that the plain error standard has been articulated in terms similar to the prejudice prong of Strickland. A "reasonable probability" presents the lower standard. Hence, the conclusion on direct appeal that plain error did not occur implicitly defeats the higher standard of the prejudice prong.

> Accordingly, we conclude that the trial court did not err in ruling
> defendant could not prove his trial counsel was ineffective for
> failure to object to admission of the T-shirt evidence.

*Answer*, Ex. J, pp. 2-4 (citations omitted).

In upholding the trial court's denial of the petitioner's claim that his trial counsel was ineffective for failing to object to the tee shirt evidence on grounds that the store clerk's testimony did not support the prosecution's offer of proof, the appellate court specifically stated that "the testimony of the T-shirt store clerk supported the trial court's ruling and the related offer of proof." The record supports this statement. *Record*, Vol. X, pp. 77-157. In upholding the trial court's denial of the petitioner's claim that trial counsel was ineffective for failing to object to the admission of the tee shirt on First Amendment grounds, the appellate court stated the obvious: the petitioner's First Amendment rights are irrelevant to the issue of whether the tee shirt was properly admitted. See U.S. CONST. amend. I (providing that "Congress shall make no law . . . abridging the freedom of speech"). Under these circumstances, the state courts' denial of these ineffective assistance claims was not contrary to Strickland, nor was it an unreasonable determination of the facts.

## 2. Failure to Obtain Expert Witness

The petitioner further claims that his trial counsel was ineffective for failing to obtain an expert witness on gangs. The state appellate court upheld the trial court's denial of this claim as follows:

> Defendant next contends his trial counsel was ineffective by failing
> to call unnamed expert witnesses to testify that persons who, like
> defendant, wear sports clothing reputedly constituting gang colors
> are not necessarily gang members; defendant's turning his back on
> the victim and leaving the mall would have been perceived as a
> sign of weakness, not what a rival gang member would do, which

may have inflamed the victim; and the "mob mentality" at the time of the shooting pressured the victim to "save face" by acting on his earlier threats against defendant. We are not persuaded.

Whether to call a particular witness, including an expert witness, is a tactical decision within the discretion of trial counsel. Where expert testimony would have been of questionable benefit or would not have been supported by the evidence, failure to call the expert does not establish ineffective assistance of counsel.

In reviewing Crim. P. 35(c) hearings that involved alleged ineffective assistance of counsel for failure to call a witness, divisions of this court have considered the absence of an offer of proof concerning who these potential witnesses might be, their willingness to testify (or their amenability to process), and the substance, credibility, or admissibility of their testimony.

Here, the description of expert testimony proferred [sic] in defendant's Crim. P. 35(c) motion does not meet these tests.

First, defendant's motion provides no information whatsoever as to the existence of experts willing to express the opinions suggested by defendant. Nor does defendant indicate that he broached the possibility of expert testimony to his trial counsel. Thus, given the proliferation of expert testimony, and the recognized risk that scientific assertions of dubious validity may be admitted, in our view a defendant must present more than unsubstantiated assertions concerning experts who may not exist or who, if identified, may not testify as hypothesized.

Second, at trial, defendant's theory was self-defense, defense counsel argued self-defense in closing, and the jury was so instructed. Numerous witnesses described the actions of defendant, the victim, and their companions, including the fact that, despite defendant's clearly displaying his pistol outside the mall, after briefly retreating the victim again approached him. The People did not present expert testimony on gang activity, although one of their lay witnesses described gang colors and gang sign language, including defendant's clothing and his gestures.

Under these circumstances, we perceive no benefit to defendant, even assuming that experts would have been available to testify as he suggests. The key to self-defense is what a defendant reasonably believes the victim is going to do. Information about

the victim, such as prior criminality and propensity to violence, is
only relevant if the defendant asserts that he knew of the
information and it played a role in his decision to use force.

The hypothetical expert testimony would not have illuminated the
reasonableness of defendant's belief concerning the victim based
on facts that he knew about the victim. At most it would have
shown the victim's private motivations in continuing to approach
defendant after display of the pistol and his perceptions or
misperceptions of defendant as a rival gang member.

Accordingly, we conclude the trial court did not err in ruling that
defendant failed to show his counsel provided ineffective
assistance for failing to call expert witnesses.

*Answer*, Ex. J, pp. 4-7 (internal quotations and citations omitted).

The petitioner argued to the state appellate court that the expert testimony would have

shown that (1) the sports jersey he was wearing at the mall was also worn by "non-gang

members"; (2) when he initially retreated from the victim he may have "egged the situation on";

(3) the victim's other gang members most likely "spurred [the victim] on through the door"

leaving petitioner with "no choice but that to protect himself"; and (4) "[f]inally, because

[petitioner] most likely recognized that the victim was a gang member and knowing that

[petitioner] was not, most likely created additional apprehension and out-right fear in the mind of

[petitioner]." *Answer*, Ex. G, pp. 18-19. The petitioner's proposed expert testimony is largely

speculative. He did not demonstrate to the state courts that any such expert existed, or that any

factual basis exists for the proposed expert testimony, and he has not by clear and convincing

evidence rebutted any of the appellate court's factual determinations. He failed to demonstrate

to the state courts that his counsels' failure to call an expert witness was unreasonable and

deprived him of a fair trial. Therefore, the appellate court's denial of this claim was not contrary

to <u>Strickland</u>, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence.

The petitioner has not provided any basis to grant the Application as to Claim Five.

## C. Claim One

The respondents assert that the petitioner did not exhaust Claim One in the state courts because he did not present it as a federal claim. Claim One alleges that the petitioner was denied a fair trial in violation of the Fourteenth Amendment when the trial court allowed the tee shirt to come in as res gestae evidence. *Application*, p. 5. In his brief to the state appellate court, the petitioner argued that the tee shirt was inadmissible under the Colorado Rules of Evidence and relevant state case law. *Answer*, Ex. A, pp. 14-19; Ex. C, pp. 2-3. Specifically, the petitioner argued that the foundational requirements for admission of the tee shirt were not met, the offer of proof made by the prosecution was not supported by the evidence, and that any relevancy was greatly outweighed by the prejudicial effect against the petitioner. Id.

"Federal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights." Spears v. Mullin, 343 F.3d 1215, 1225 (10th Cir. 2003). To state a constitutional claim for wrongful admission of evidence, a defendant must argue that admission of the evidence was so grossly prejudicial that it fatally infected the trial and rendered the entire trial fundamentally unfair. Id. at 1226. The reviewing court must look at the admission of the evidence within the context of the entire trial. Id.

The petitioner did not present this claim to the state courts as a matter of fundamental fairness; he presented it solely as an evidentiary error under state law.[3] Thus, the state courts did not have an opportunity to review the claim under a due process analysis.

Comity is the rationale underlying the exhaustion requirement--state courts must be provided with the first opportunity to pass on alleged defects in their criminal proceedings leading to the conviction at issue. Rose v. Lundy, 455 U.S. 509, 518 (1982). In order to "encourage state prisoners to seek full relief first from the state courts," the exhaustion requirement must be "rigorously enforced." Id. Exhaustion of state remedies requires that a petitioner raise in the state courts both the factual and legal bases of his habeas claims. Gibson v. Scheidemantel, 805 F.2d 135, 138 (3rd Cir. 1986). Consequently,

> [i]t is not enough that the petitioner presents to the state court the facts upon which a federal claim is based. The claim must be substantially equivalent to that litigated in the state court. Both the legal theory and the facts supporting a federal claim must have been submitted to the state court.

O'Halloran v. Ryan, 835 F.2d 506, 508 (3rd Cir. 1987) (quotations and citations omitted).

The petitioner's allegations and supporting evidence did not offer the state courts a "fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional

---

[3]The petitioner does not mention the constitution, due process, or fundamental fairness in his five page argument regarding admission of the tee shirt. Most of his argument is devoted to relevancy of the tee shirt. In his argument regarding the danger of unfair prejudice under Rule 403, C.R.E., he states only the following:

> It is unlikely that the jury could give Mr. Aviles a fair trial, and may have inferred that he had a motive for murder in light of the sentiment displayed on the shirt.

Answer, Ex. A, p. 19. This argument is not sufficient to apprise the state court that the petitioner is invoking the Due Process Clause of the United States Constitution.

claim." See Thomas v. Gibson, No. 99-5030, 2000 WL 986587 at *13 (10th Cir. July 18, 2000).

Because the substance of the petitioner's federal habeas corpus claim was not fairly presented to

the state courts, see Picard, 404 U.S. at 278, this claim has not been exhausted.

When a petitioner fails to exhaust available state remedies, the federal court must

determine whether the petitioner would be able to raise the claim in the state court. Demarest,

130 F.3d at 939. If the claim would be procedurally barred in the state court, the claim is

procedurally defaulted for purposes of habeas relief. Coleman, 501 U.S. at 735 n.1.

Claim One is procedurally defaulted. Because the petitioner already presented this claim

to the state courts as a state evidentiary issue, he is prohibited from reasserting it as a violation of

his Fourteenth Amendment rights. Colo. R. Crim. P. 35(c)(3)(VII) (providing that post

conviction relief is not available to a petitioner for a claim that could have been presented on

direct appeal);[4] People v. Versteeg, 165 P.3d 760, 763 (Colo. App. 2006) (stating that Rule 35(c)

motions filed after July 1, 2004, are subject to procedural bar in Rule 35(c)(3)(VII)). See also

DePineda v. Price, 915 P.2d 1278, 1281 (Colo. 1996) (stating that "a defendant is precluded

from raising an issue under Crim.P. 35 if its review 'would be nothing more than a second

appeal'").

---

[4]Colorado Rule of Criminal Procedure 35(c)(3)(VII) provides that the court shall deny any claim that could have been presented in an appeal previously brought or postconviction proceeding previously brought except the following: (a) any claim based on events that occurred after initiation of the defendant's prior appeal or postconviction proceeding; (b) any claim based on evidence that could not have been discovered previously through the exercise of due diligence; (c) any claim based on a new rule of constitutional law that was previously unavailable, if that rule should be applied retroactively to cases on collateral review; (d) any claim that the sentencing court lacked subject matter jurisdiction; (e) any claim where an objective factor, external to the defense and not attributable to the defendant, made raising the claim impracticable.

I may not consider issues raised in a habeas petition that have been defaulted in state court on an independent and adequate procedural ground unless the petitioner can either (1) show cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) demonstrate that a failure of this court to consider the claims will result in a fundamental miscarriage of justice. English v. Cody, 146 F.3d 1257, 1259 (10th Cir.1998) (citing Coleman, 501 U.S. at 749-50); Steele v. Young, 11 F.3d 1518, 1521 (10th Cir.1993).

The petitioner claims that the procedural default was caused by ineffective assistance of his counsel on direct appeal. *Applicant's Traverse to Respondents' Answer* [Doc. #18, filed 9/20/06] (the "Traverse"), pp. 2, 4. Under some circumstances, a petitioner can establish cause to excuse a procedural default by showing that counsel was ineffective in failing to properly preserve a claim for state court review. Edwards v. Carpenter, 529 U.S. 446, 451 (2000). "[I]neffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim." Id. (emphasis in original). The ineffective assistance claim must be presented to the state court before it can be used to establish cause for procedural default of the underlying claim. Id. at 452. An ineffective assistance claim which is asserted as cause for the procedural default of another claim can itself be procedurally defaulted. Id. at 453. If so, the procedural default may be excused only if the prisoner can show cause and prejudice with respect to the ineffective assistance claim. Id. at 454.

The petitioner presented his ineffective assistance claim to the state courts. In his second Rule 35(c) motion to the state courts, the petitioner argued that his appellate counsel was ineffective for failing to present his claims "in a federal constitutional fashion." *District Court*

*Record*, People of the State of Colorado vs. Gene Aviles, 97CR0802, Vol.2, Bates Nos. 000387-405; ("District Court Record"); *Answer*, Ex. M, p. 4.

The trial court denied the petitioner's claim for ineffective assistance of appellate counsel as follows:

> Defendant alleges, "Defendant received ineffective assistance of counsel on his first appeal as a matter of right because counsel failed to exhaust his federal constitutional claims to the state courts, thus precluding Defendant from federal habeas corpus review under 28 U.S.C. § 2254 on his direct appeal claims." ("Motion 2" at 2).
>
> On Defendant's direct appeal claims in his first appeal through Counsel, Defendant appealed the first-degree murder conviction. At that time, Counsel did not apply for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(b)(1) because Defendant had not exhausted the remedies in Crim. P. 35(c). Colorado has a corrective process for writ of habeas corpus under Crim P. 35(c), and Defendant has asserted no circumstances that show the Colorado process is ineffective. 28 U.S.C. § 2254(b)(1). Therefore, 28 U.S.C. § 2254(b)(1) does not apply to this case. Counsel was not required to raise the issue of habeas corpus in the direct appeal.

*District Court Record*, Vol. 2, Bates Nos. 000411-12.

The trial court's order does not appear to address the petitioner's claim. The petitioner argued that because his counsel on direct appeal did not present his claims as matters of federal law he is precluded from asserting them to the federal courts in a federal habeas application. As discussed above, the petitioner is correct. The petitioner has already presented Claim One to the state courts as a state evidentiary issue, and he is prohibited from reasserting it in the state courts as a violation of his Fourteenth Amendment rights. Therefore, the petitioner cannot exhaust Claim One as a Fourteenth Amendment violation in the state courts. This Court cannot review the state court's adjudication of Claim One as an evidentiary issue because it is not based on a

"violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(b)(1).

In addition, this Court cannot address Claim One as a Fourteenth Amendment violation unless

the petitioner can show cause for defaulting it and actual prejudice as a result of the alleged

violation of federal law or can demonstrate that the failure to consider the claims will result in a

fundamental miscarriage of justice. Coleman, 501 U.S. 722, 750 (1991).

The petitioner appealed the trial court's denial of his ineffective assistance claim.

*Answer*, Ex. M. In affirming the trial court's denial of the petitioner's claim for ineffective

assistance of appellate counsel, the appellate court stated:

> Defendant contends that his appellate counsel was ineffective by
> failing to present his claims on direct appeal as issues of federal
> constitutional law, thereby precluding his right to federal habeas
> corpus review. We disagree.
>
> The test for determining whether a defendant has received
> ineffective assistance of appellate counsel is the same as the test
> for ineffective assistance of trial counsel. Therefore, a defendant
> must show both that his counsel's performance was
> constitutionally deficient and that the deficient performance
> prejudiced him. If a court determines that a defendant failed
> affirmatively to demonstrate prejudice, it may resolve the claim on
> that basis alone.
>
> Pursuant to 28 U.S.C. § 2254(d), federal habeas corpus relief shall
> not be granted with respect to any claim that was adjudicated on
> the merits in state court proceeding unless the adjudication of the
> claim (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established federal law, as
> determined by the Supreme Court of the United States; or (2)
> resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> state court proceeding. Because defendant did not allege how
> either of these factors applies to his state court proceeding, we
> conclude, as a matter of law, that defendant has failed to establish
> prejudice. Accordingly, we need not determine whether counsel's
> performance was deficient.

> Under these circumstances, we affirm the trial court's order
> denying defendant's Crim. P. 35(c) motion for ineffective
> assistance of appellate counsel.

*Answer*, Ex. P, pp. 2-3 (internal citations omitted).

As with the trial court's order, the state appellate court does not appear to address the issue presented by the petitioner. The appellate court denied the petitioner's motion because he did not discuss how the factors enunciated in 28 U.S.C. § 2254(d) applied to his state court proceedings. However, the factors enunciated in§ 2254 do not apply to a state court proceeding unless the state court adjudicates his claims. If a federal habeas petitioner has exhausted his state remedies as to a claim that he is in custody in violation of federal law, his federal habeas petition cannot be granted as to that claim unless the state court's adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(a) and (d). If the federal claim has never been adjudicated by the state court, the petitioner cannot engage in any meaningful discussion of whether the state court's decision was contrary to established federal law or was based on an unreasonable determination of the facts. Thus, the state appellate court's reliance on § 2254(d) is misplaced.

The state courts' decisions notwithstanding, it is clear that the petitioner has exhausted in the state court his claim that appellate counsel rendered ineffective assistance by failing to present Claim One to the state courts as a federal issue. *District Court Record*, Vol. 2, Bates

Nos. 000396-398. Thus, he is not procedurally barred from asserting in this Court the same ineffective assistance as cause for defaulting Claim One in the state courts.

The petitioner has not, however, met his burden to show that ineffective assistance of his appellate counsel caused the default of Claim One. The petitioner states that, as an appendix to his motion for ineffective assistance of appellate counsel, he presented Claim One and others as constitutional issues, but neither the trial court nor the appellate court looked at the merits of his proposed constitutional claims. *Traverse*, p.2.

His presentation of the claims as federal constitutional issues can be found in his second postconviction motion to the trial court.[5] *District Court Record*, Vol.2, Bates Nos. 000396-97. When presenting Claim One as a constitutional issue, he argued that the tee shirt was more prejudicial than probative under the Colorado Rules of Evidence. He did not show that Claim One could survive a constitutional analysis, *i.e.*, he did not show that, within the context of the entire trial, admission of the tee shirt was so grossly prejudicial that it rendered the trial fundamentally unfair.

In his Traverse, the petitioner argues that he was denied a fair trial because the tee shirt was admitted based upon the prosecution's offer of proof, and the testimony proffered by the prosecution was never presented. *Traverse*, pp. 7-8. However, as discussed in my analysis of Claim Five, the testimony proffered by the prosecution was presented.

In order to show ineffective assistance of counsel under <u>Strickland</u>, the petitioner has to demonstrate that his counsel's failure to submit Claim One as a constitutional claim was unreasonable and that he suffered prejudice as a result of counsel's failure. Because the

---

[5]In his motion to the appellate court, he refers the court to the motion he submitted to the trial court. *Answer*, Ex. M, p. 9.

petitioner has not shown that Claim One has any merit as a federal claim, it follows that he has

not shown that his counsel was unreasonable for not presenting it as a federal claim, or that he

suffered any prejudice.  Accordingly, I find no basis upon which to grant the Application as to

Claim One.

### D.   Claim Three

The respondents assert that the petitioner did not exhaust Claim Three in the state courts

because he did not present it as a federal claim.  Claim Three alleges that the petitioner was

denied a fair trial in violation of the Fourteenth Amendment when (1) the trial court submitted a

jury instruction which required the plaintiff to prove he was not the initial aggressor; (2) the trial

court refused his instruction regarding apparent necessity; and (3) the trial court refused his

theory of the case instruction.  *Application*, p. 6.

The federal law on this issue is well established:

> A § 2254 petitioner has a heavy burden in attempting to set aside a
> state conviction based on an erroneous jury instruction.  Maes v.
> Thomas, 46 F.3d 979, 984 (10th Cir.1995).  As a general rule,
> errors in jury instructions in a state criminal trial are not
> reviewable in federal habeas corpus proceedings, "unless they are
> so fundamentally unfair as to deprive petitioner of a fair trial and
> to due process of law." Long v. Smith, 663 F.2d 18, 23 (6th
> Cir.1981) (citing Henderson v. Kibbe, 431 U.S. 145, 154, 97 S. Ct.
> 1730, 1736-37, 52 L. Ed.2d 203 (1977)).  In Henderson, the
> Supreme Court stressed "[t]he question in such a collateral
> proceeding is 'whether the ailing instruction by itself so infected
> the entire trial that the resulting conviction violates due process.' "
> 431 U.S. at 154, 97 S. Ct. at 1737 (quoting Cupp v. Naughten, 414
> U.S. 141, 147, 94 S. Ct. 396, 400-01, 38 L. Ed.2d 368 (1973)).

>> "The burden of demonstrating that an erroneous
>> instruction was so prejudicial that it will support a
>> collateral attack on the constitutional validity of a
>> state court's judgment is even greater than the
>> showing required to establish plain error on direct

> appeal." The question ... is not whether the
> [challenged] instruction is "undesirable, erroneous,
> or even 'universally condemned,'" but whether the
> instruction so infected the trial that the resulting
> conviction violates due process.

> Maes, 46 F.3d at 984 (quoting Henderson, 431 U.S. at 154, 97 S.
> Ct. at 1736-37) (citations omitted).

Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997).

In his brief to the state appellate court, the petitioner did not address due process or fundamental fairness; he presented this claim solely as a matter of state law. *Answer*, Ex. A, pp. 25-29; Ex. C, p. 6. The petitioner does cite to the Fourteenth Amendment in the first sentence of his argument:

> It is the responsibility and duty of the trial court to fully and
> properly instruct the jury on all essential elements of the crime
> charged. People v. Cowden, 735 P.2d 199, 202 (Colo. 1987);
> Ramirez v. People, 682, P.2d 1181, 1184 (Colo. 1984); U.S.
> Const., Amends. V, XIV; Colo. Const. Art. II [§] 25.

*Answer*, Ex. A, p. 25.

However, this fleeting reference to the Fourteenth Amendment--without more--is not sufficient to alert the state courts that the petitioner is claiming the instruction so infected the entire trial that his resulting conviction violated his constitutional due process rights. Indeed, the state court did not address the claim as one of fundamental fairness. *Answer*, Ex. D. pp. 8-13.

Claim Three is procedurally defaulted for the reasons stated in my analysis of Claim One. The petitioner asserted this claim as a matter of state law; he is prohibited from reasserting it as a violation of his Fourteenth Amendment rights. Colo. R. Crim. P. 35(c)(3)(VII); Versteeg, 165 P.3d at, 763; DePineda, 915 P.2d at 1281.

As with Claim One, the petitioner claims that the procedural default was caused by ineffective assistance of appellate counsel. *Traverse,* pp. 2, 4.

### 1. Initial Aggressor Instruction

The petitioner first claims that his due process rights were violated when the trial court submitted an "initial aggressor" instruction. *Application*, p. 6. The instruction states the following:

> If [defendant] was not the initial aggressor, he was not required to flee, but was entitled to stand his ground and exercise his legal right to self-defense, as elsewhere defined in these instructions.

*Trial Transcript*, Vol. XIV, p. 31.

In his second postconviction motion, the petitioner did not assert ineffective assistance of appellate counsel based on failure to present the initial aggressor instruction as a federal claim. *District Court Record*, Vol. 2, Bates Nos. 000398-400. Therefore, he has not exhausted his ineffective assistance claim as to the initial aggressor instruction, and it is procedurally defaulted in the state courts for the reasons discussed in Claim One. The petitioner does not address cause for defaulting the ineffective assistance claim, nor does he discuss actual prejudice as to this claim. Consequently, he cannot use ineffective assistance of appellate counsel to establish cause for the procedural default of his initial aggressor instruction claim. Edwards, 529 U.S. at 452.

Moreover, on direct appeal, the court addressed the petitioner's contention that the trial court erred in giving an "initial aggressor" instruction. *Answer*, Ex. D, p. 9. The court stated that the defendant did not object to the instruction on this basis at trial. Id. Therefore, the court reviewed the instruction for plain error. Id. at pp. 9-10. The court noted that there was evidence at trial to show that the petitioner "escalated the seriousness of the confrontation by pulling out a

gun when the victim was still some distance away." Id. at p. 10. The court determined that "it was not error, let alone plain error, for the trial court to give the initial aggressor instruction." Id.

The burden of demonstrating through a collateral attack that a jury instruction violated due process "is even greater than the showing required to establish plain error on direct appeal." Henderson v. Kibbe, 431 U.S. 145, 154 (1977). Because this claim did not pass the less stringent plain error test on direct appeal, it would be impossible for the petitioner to meet his burden to show that counsel's failure to present this claim as a due process violation on direct appeal was unreasonable and that he suffered resulting prejudice.

### 2. Apparent Necessity Instruction

The petitioner also alleges that he was denied his due process rights to a fair trial when the court refused his jury instruction on apparent necessity. *Application*, p. 6. The petitioner claims that ineffective assistance of appellate counsel caused the procedural default of this claim because it was not presented as a federal matter on direct appeal. *Traverse*, p. 4. However, in his postconviction motion for ineffective assistance of appellate counsel, he does not address counsel's ineffectiveness for failure to submit the trial court's denial of this instruction as a constitutional issue. *District Court Record*, Vol. 2. Bates Nos. 000398-400. Therefore, he has not exhausted his ineffective assistance claim as to this issue. He does not address cause and prejudice as to the ineffective assistance claim. Consequently, and he cannot use ineffective assistance as cause for the procedural default of the apparent necessity instruction claim. Edwards, 529 U.S. at 452.

### 3. Theory of Case Instruction

Finally, the petitioner claims that his due process rights were violated when the trial court refused his theory of the case instruction. His proposed instruction stated the following:

> [Defendant] maintains that he is not guilty of first degree murder because he did not act after deliberation in causing the death of [the victim], but rather acted as any reasonable person would act under his circumstances and surroundings at that particular instant in time. Those circumstances include [defendant's] fear of [the victim], based on [the victim's] affiliation with the Crips street gang, the massive number of people who were with [the victim] and behaving threateningly toward [defendant] that day and the fact that [the victim] kept pursuing [defendant] even after [defendant] had displayed the gun.

*Answer*, Ex. D, p. 12.

The trial court refused to give the instruction as tendered. Instead, the court gave the following instruction to the jury:

> It is [defendant's] theory of the case that he is not guilty of first degree murder because he did not act intentionally and after deliberation in causing the death of [the victim], but rather acted as any reasonable person would have, under his circumstances and surroundings at that particular instant in time.

Id.

In refusing the petitioner's tendered instruction, the trial judge stated:

> [T]he Court now would like to turn its attention to Defendant's Tendered Instruction 2, the defendant's theory of the case instruction. The Court did give or is going to give a theory of the case instruction which is instruction number 20. The Court did reject Defendant's Tendered Instruction Number 2 for several reasons.
>
> First of all, the instructions are the Court's statement of law to the jury, and instructions should not be given that in anyway invade the jury's province of making factual determinations. The instruction instructs the jury that the circumstances surrounding

this incident include Mr. Aviles' fear of Mr. Seekamp, Mr. Seekamp's affiliation with a street gang, the massive number of people, all of these things which are contested in this evidence and it is simply inappropriate for this Court to give this jury an instruction that suggest to them that the Court has made these findings of fact which they would then be bound by. Therefore, the Court rejected Defendant's Tendered Instruction 2.

The Court requires that the instruction begin with the words of 'the defendant's theory of the case" so that the jury clearly understands that is what that instruction is intended to convey to them, and that it is not any direction to them as to how they should find in this case. To do otherwise I think would be confusing to the jury and therefore the Court will reject Defendant's Tendered Instruction 2 as well.

*Trial Transcript*, Vol. XIV, pp. 10-11.

The petitioner appealed the trial court's refusal of his theory of the case instruction.

*Answer*, Ex. A, pp. 25-29. In upholding the trial court's ruling, the appellate court stated that the

trial court did not err in refusing the instruction because the tendered instruction was

argumentative and called attention to specific points of evidence. Id. at Ex. D, pp. 12-13.

The petitioner asserts that his appellate counsel procedurally defaulted this claim because

it was not submitted as a constitutional issue on direct appeal. *Traverse*, pp. 2, 4. The petitioner

exhausted the ineffective assistance claim in the state courts. *District Court Record*, Vol. 2, pp.

Bates Nos. 000398-400. Therefore, he is not procedurally barred from asserting the same

ineffective assistance in this Court as cause for defaulting this claim.

The petitioner has not, however, met his burden to show that ineffective assistance of his

appellate counsel caused the default of this claim. Neither the Application nor the Traverse

contain any coherent arguments regarding the ineffectiveness of counsel in failing to present the

claim as a constitutional issue, nor does the record contain any meritorious discussion of the claim as a constitutional issue.

In his motion to the state trial court, the petitioner attempted to present the substance of his claim as a due process claim. *District Court Record*, Vol. 2, Bates Nos. 000398-400. The petitioner argued that the theory of the case instruction, as given, "remove[d] from the prosecution the necessity of proving the "intent/motive" element of the first degree murder charge." Id. at Bates No. 000399. The petitioner further argued:

> Defendant's trial was chock full of evidence of gang involvement; of mob mentality; that Defendant was being pursued by the mob; that the victim initially turned away when Defendant pulled a hand gun out, but because of the mob/gang mentality returned to pursue Defendant; and most importantly, that Defendant feared for his life and thought that the victim intended to kill him. Accordingly, since Defendant's proposed instructions were correct statements of the law and were supported by the evidence given at the trial (and by the prosecution's own offer of proof for motive of the killing and introduction of the t-shirt evidence); and because the defense is not a part of the charge, the instruction should have been given as tendered by the defense. Failure to do so undermined the fundamental fairness (and thus due process) of the charge in that it removed from the district attorney the necessity of proving the "intent" component of the first-degree murder charge. The whole theory of the prosecution was that Defendant was a racist, and involved in a rival gang from the victim's. This theory provided the motive for Defendant to have acted. Yet when the time came, the D.A. did not have to prove this because the trial court would not grant a proper instruction. Accordingly Defendant was denied a fair trial and his Fourteenth Amendment protections to due process of law.

Id. at Bates Nos. 000399-400.

The petitioner's argument is without merit. The petitioner mischaracterizes his proposed second sentence as "correct statements of law." As the trial court stated, his proposed second sentence contains statements of fact which are to be decided by the jury. Moreover, refusal of

the petitioner's proposed instruction did not remove the prosecution's burden of proving intent. The trial court instructed the jury on the elements of the crime, including "intent"; the definition of "intent"; and the burden of the prosecution to prove intent beyond a reasonable doubt." *Trial Transcript*, pp. 26-27.

Importantly, the petitioner has made no showing that the trial court's failure to submit his instruction so infected the trial that his conviction is in violation of due process. As a result, he has failed to establish that his appellate counsel's failure to present this claim as a constitutional issue on appeal constitutes ineffective assistance or that he suffered resulting prejudice. The petitioner is barred from asserting ineffective assistance as cause for defaulting this claim.

I find no basis on which to grant the Application as to Claim Three.

### E. Claim Four

The respondents assert that the petitioner did not exhaust Claim Four in the state courts because he did not present it as a federal claim. Claim Four alleges that the evidence was insufficient to convict the petitioner on a charge of first degree murder in violation of the Fourteenth Amendment. *Application*, p. 6A.

"In federal habeas proceedings, the appropriate inquiry into a sufficiency-of-the-evidence claim is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Romano v. Gibson, 239 F.3d 1156, 1164 (10th Cir. 2001) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in original). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16.

The petitioner argued this claim under the same standard set forth in <u>Romano</u>. *Answer*, Ex. A, pp. 30-33. The state appellate court examined the claim under the federal standard. *Application*, first consecutive attachment, pp. 13-14; *Answer*, Ex. D, pp. 13-14. Therefore, I find that the petitioner fairly presented and exhausted this claim as a violation of his due process rights in the state courts.[6]

I may grant the Application as to this claim only if the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

The appellate court denied the claim as follows:

> Finally, we reject the defendant's contention that the evidence was insufficient to support the jury's guilty verdict for first degree murder.

> When the sufficiency of the evidence is challenged on appeal, an appellate court must determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that defendant is guilty beyond a reasonable doubt of the crime charged. The prosecution is given the benefit of any inferences fairly drawn from the evidence. <u>Kogan v. People</u>, 756 P.2d 945 (Colo. 1988).

> Section 18-3-102(1)(a), C.R.S. 1999, provides that "[a] person commits the crime of murder in the first degree if . . . [a]fter deliberation and with the intent to cause the death of a person other than himself, he causes the death of that person or of another person." The term "after deliberation" means "not only

---

[6]Both the appellate court and the petitioner cite to <u>Kogan v. People</u>, 756 P.2d 945 (Colo. 1988). In <u>Kogan</u>, the Colorado Supreme Court examined a sufficiency of the evidence claim under the federal constitutional standard.

intentionally but also that the decision to commit the act has been made after the exercise of reflection and judgment concerning the act. An act committed after deliberation is never one which has been committed in a hasty or impulsive manner. Section 18-3-101(3), C.R.S. 1999; see People v. Bartowsheski, 661 P.2d 235 (Colo. 1983).

Here, according to the testimony of the prosecution's witnesses, defendant exited the mall and was followed by the victim. He then pulled out a gun and brandished it in plain view of the victim, at which time the victim retreated. The victim, undaunted, again pursued defendant, at which time defendant turned and shot the victim, killing him in view of more than fifteen witnesses.

Viewing the evidence in the light most favorable to the prosecution, we conclude that it is sufficient to sustain the conviction of first degree murder.

*Answer*, Ex. D, pp. 13-14.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal habeas review is limited to deciding whether the state court's decision--that there was sufficient evidence to support a conviction for first degree murder--is contrary to or an unreasonable application of the principles enunciated in Jackson. See 28 U.S.C. § 2254(d)(1); Spears v. Mullin, 343 F.3d 1215, 1238 (10th Cir. 2003). Here, the appellate court examined the sufficiency of the evidence in light of the substantive elements of the statute and in the light most favorable to the prosecution, and determined that it was sufficient to support a conclusion by a reasonable person that the petitioner was guilty beyond a reasonable doubt of first degree murder. The petitioner does not rebut by clear and convincing evidence any factual determinations made by the state court.

I find that the state appellate court's determination of this matter is consistent with clearly established federal law and its decision was based on a reasonable determination of the

facts presented.  Therefore, I find no basis upon which to grant the petitioner's Application with respect to this claim.  See 28 U.S.C. 2254(d).

## F.   Claim Six

Claim Six alleges that the petitioner's due process rights were violated because he was not provided with an evidentiary hearing and assistance of counsel for his first Rule 35(c) motion.  *Application*, p. 6B.  Under the Colorado Rules of Criminal Procedure, a defendant seeking postconviction relief is not entitled to an evidentiary hearing unless the motion, the files, and the record clearly establish grounds for relief.  Rule 35(c)(3)(IV) and (V).  The state district court determined that, based on the motion and portions of the file, the petitioner's claims did not have merit.  *Application*, third consecutive attachment.

"[N]o constitutional provision requires a state to grant post-conviction review."   Sellers v. Ward, 135 F.3d 1333, 1339 (10th Cir. 1998) (citing Pennsylvania v. Finley, 481 U.S. 551, 557 (1987)).  Where an alleged constitutional error "focuses only on the State's post-conviction remedy and not the judgment which provides the basis" for a petitioner's incarceration, as here, "it states no cognizable federal habeas claim."  Id.  In addition, there is no constitutional right to counsel when mounting a collateral attack on a conviction.  Finley, 481 U.S. at 555.  Consequently, Claim Six does not assert a violation of the Constitution or federal law.  Federal habeas relief is limited to alleged violations of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).  Thus, Claim Six is not appropriate for habeas review.

# IV.  CONCLUSION

I respectfully RECOMMEND that the Application be DENIED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated November 19, 2008.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge