**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 06-cv-01329-CMA-BNB

GENE E. AVILES,

      Applicant,

v.

LOU ARCHULETTA, Warden, L.C.F., and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

**ORDER ADOPTING AND AFFIRMING NOVEMBER 19, 2008 RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

---

This matter is before the Court on the November 19, 2008 Recommendation by the Magistrate Judge that Petitioner's Application for a Writ of Habeas Corpus pursuant to 28 U.S. C. § 2254 be denied.  (Doc. # 29.)  Plaintiff has objected to this recommendation.  (Doc. # 37.)  In light of the objections, the Court has conducted the requisite de novo review of the issues, the recommendation, and Petitioner's objections.

For the reasons stated below, the Court ADOPTS and AFFIRMS the Magistrate Judge's recommendations.

## I.  BACKGROUND

A detailed recitation of the factual and procedural background is set out in the Magistrate Judge's recommendation (Doc. # 29).  This Court will refer to the facts in the Magistrate Judge's recommendation as needed in the analysis.

## II.  LEGAL STANDARDS

A.    <u>TITLE 28 U.S.C. § 2254</u>

This Court may review an application for writ of habeas corpus "only on the ground that [an applicant] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  An application cannot be granted unless it appears that the applicant has exhausted available state remedies.  28 U.S.C. § 2254(b)(1).

If an applicant exhausts his available state remedies, his application may be granted only if it is based on an underlying state court decision that (1) is "contrary to . . . clearly established Federal law, as determined by the Supreme Court," (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court," or (3) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); *see also Trice v. Ward*, 196 F.3d 1151, 1159 (10th Cir. 1999).  A decision is contrary to clearly established federal law when it contradicts prior Supreme Court precedent and arrives at a conclusion that is "diametrically different" from that precedent.  *Williams*, 529 U.S. at 406.  A decision involves an unreasonable application when it utilizes the correct legal principle but reaches an "objectively unreasonable" outcome based on the facts at issue.  *Id. at 409*.  However, the Court "may not issue the writ simply because [it concludes] in [its] independent judgment that the state court applied the law

erroneously or incorrectly.  Rather, [the Court] must be convinced that the application was also 'objectively unreasonable.'"  *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 566 n.4 (10th Cir. 2000), overruled on other grounds by *McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001).

In addition, pursuant to this Court's habeas review, a presumption of correctness exists regarding state trial and appellate court findings of fact.  *Sumner v. Mata*, 455 U.S. 591, 592-93 (1982).  As such, Applicant bears the burden of rebutting this presumption "by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997).

If an applicant fails to exhaust available state remedies, a federal court should dismiss the application without prejudice so that the state remedies may be pursued.  *Demarest v. Price*, 130 F.3d 922, 939 (10th Cir. 1997).  The federal court, however, should first consider whether the applicant would be able to raise the unexhausted claims in the state court.  *Id.*

If the state court to which the applicant would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, the applicant's claims are procedurally defaulted for purposes of federal habeas corpus relief.  *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).  The federal court may not consider issues raised in a habeas corpus petition that have been defaulted in state court on an independent and adequate procedural ground unless the petitioner can show cause for the default and actual prejudice as a result of the alleged violation

of federal law or can demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice.  *Id.* at 750.  The determination of cause, prejudice, and fundamental miscarriage of justice are matters of federal law.  *Demarest*, 130 F.3d at 941.

**B.    _PRO SE_ APPLICANT**

Petitioner is proceeding *pro se.*  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."  *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a petitioner can prove facts that have not been alleged, or that a defendant has violated laws in ways that a petitioner has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a [petitioner's] complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the [petitioner] in the absence of any discussion

of those issues").  The petitioner's *pro se* status does not entitle him to application of different rules.  *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

**C.**   **OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72 and 28 U.S.C. § 636(b)(1), a party may object to any portion of a Magistrate Judge's recommendation by filing specific objections within 10 days of the party's receipt of the recommendation.  When timely objections are filed, the district court must review *de novo* the specific conclusions of the Magistrate Judge to which objections have been directed.  28 U.S.C. § 636(b)(1)(C); *Northington v. Marin*, 102 F.3d 1564, 1570 (10th Cir. 1996).  However, when no objections are filed, a district court may apply whatever standard of review it deems appropriate.  *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

### III.  ANALYSIS

Petitioner's Application for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 contains six claims for relief.  The Magistrate Judge found no basis in any of the six claims on which to grant the Application.  Petitioner then filed specific objections on five of the six claims.  In order to maintain continuity, this Court will address the six claims in the order in which the Magistrate Judge addressed them in his Recommendation.

**A.**   **CLAIM TWO: EXCULPATPRY EXCLUSION OF EXCULPATPRY EVIDENCE**

Petitioner alleges that he was denied a fair trial in violation of the Fourteenth Amendment when the trial court excluded the following: (1) Petitioner's statement upon apprehension that he acted in self-defense; (2) evidence that

Petitioner's friend purchased another racially derogatory tee shirt a month after the shooting; and (3) testimony of witnesses at the mall regarding the demeanor of the crowd at the mall.

On this claim, Petitioner has exhausted his available state remedies.  Therefore, Petitioner's application may be granted only if it is based on an underlying state court decision that (1) is "contrary to . . . clearly established federal law, as determined by the Supreme Court," (2) "involved an unreasonable application of . . . clearly established federal law, as determined by the Supreme Court," or (3) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); *see also Trice v. Ward*, 196 F.3d 1151, 1159 (10th Cir. 1999).

Within the standard of review for legal questions provided by § 2254(d)(1) are two distinct standards: the "contrary to" standard and the "unreasonable application of" standard.  *Williams,* 529 U.S. at 404.  For a decision to be "contrary to" clearly established federal law, a petitioner could show that the state court "applie[d] a rule that contradicts the governing law set forth in [Supreme Court] cases" or that "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from our precedent." *Id.* at 405.

"[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within

§ 2254(d)(1)'s 'contrary to' clause." *Id.* at 406.  These cases, instead, are governed by

the "unreasonable application of" standard, which applies to "[a] state-court decision

that correctly identifies the governing legal rule but applies it unreasonably to the facts

of a particular prisoner's case." *Id.* at 407-8.

      For a state court to have made an "unreasonable application of" federal law,  the

state court decision must be "at such tension with governing U.S. Supreme Court

precedents, or so inadequately supported by the record, or so arbitrary as to be

unreasonable." *Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006) (*quoting Badelle

v. Correll*, 452 F.3d 648, 655 (7th Cir. 2006)).

      **1.    Petitioner's Statement Upon Apprehension That He Acted In Self-Defense.**

      Petitioner alleges that he was denied a fair trial in violation of the Fourteenth

Amendment when the trial court excluded his statement upon apprehension that he

acted in self defense.  Following the shooting death of the victim, Petitioner fled and hid

inside a garbage dumpster.  *Trial Transcript*, Vol. XII, pp. 139-151.  The police searched

the dumpsters around the mall in an attempt to find Petitioner.  *Id.* at 143.  One

particular dumpster contained a large furniture box which did not move when pushed

with a baton.  *Id.* at 146-147.  Petitioner emerged from the dumpster after the box was

hit with a baton.  *Id.* at 147.  Petitioner stated "I give up," followed at some point

thereafter by "[i]t was self-defense."  *Id.* at 147-148, 152.

      The applicable federal law on this issue was clearly established when Petitioner

was convicted.  A criminal defendant's right to present evidence in his own defense is

rooted in the Sixth Amendment's compulsory process clause and the Fifth and

Fourteenth Amendments' guarantee of due process.  *Richmond v. Embry*, 122 F.3d

866, 871 (10th Cir. 1997).  When presenting evidence at trial, "the defendant must

comply with established rules of evidence and procedure as required by the state 'to

assure both fairness and reliability in the ascertainment of guilt and innocence.'" *Id.* at

872-73 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).  The state may not,

however, "arbitrarily deny a defendant the ability to present testimony that is relevant

and material, and vital to the defense."  *Id.* at 873 (internal quotations omitted) (quoting

*United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982).

Prior to trial in this case, Defendant filed a motion to admit his statement "It was

self-defense," as an excited utterance.  The trial court did not rule on the motion at the

time and instead, reserved its ruling until the issue arose at trial.  During direct

examination by the prosecution, the arresting officer who discovered defendant hiding in

a dumpster after the shooting testified as follows:

> Q:    After you hit the box four or five times, did someone emerge from
>        the box?
> A:    Yes. I heard a voice from the box say, " I give up."
> Q:    Deputy, I'm not asking you what was said, I'm asking you, did
>        someone emerge from the box?
> A:    Yes.

Prior to cross-examination, a bench conference was held on the admissibility of

defendant's additional statement, "It was self-defense."  Defendant contended at trial, as

he does on appeal, that the statement was admissible under either the "rule of

completeness" doctrine or C.R.E. 106 because the prosecution opened the door to the

-8-

officer's testimony.  However, defendant did not reargue that the statement qualified as

an excited utterance, and the court did not analyze it as such.  (Doc. # 29 at 10.)

The appellate court determined that the trial court properly excluded Petitioner's

second statement.  The appellate court stated that "the court's failure to analyze this

issue under CRE 803(2) does not require reversal here, nor does the court's exclusion

of the statement under CRE 106 and the rule of completeness . . . .  Defendant's theory

at trial was self-defense, the jury was instructed on that theory, and defense counsel

argued self-defense during closing argument.  Thus, defendant's excluded statement

was cumulative, and the error excluding it, if any, was harmless."  *Answer*, Ex. D,

pp. 4-5.

While this Court in its independent judgment feels that the evidence should have

been admitted under the excited utterance exception to the hearsay rule, the state

courts' determination of this matter is not "contrary to" or an "unreasonable application

of" Petitioner's Fourteenth Amendment right to due process or his Sixth Amendment

right to compulsory process.  *Taylor v. Illinois*, 484 U.S. 400, 410 (1988) (stating that the

Sixth Amendment does not give a defendant an "unfettered right to offer testimony" that

is inadmissible under standard rules of evidence); *Mayes v. Gibson*, 210 F.3d 1284,

1293 (10th Cir. 2000) ("Habeas relief may not be granted on the basis of state court

evidentiary rulings unless they rendered the trial so fundamentally unfair that a denial of

constitutional rights results."); *see also Fox v. Ward*, 200 F.3d 1286, 1296-97 (10th Cir.

2000) (stating that, to justify habeas relief, a trial court's evidentiary error must be "so

grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process").

Petitioner in his Objections submits that "the Magistrate Judge's determination of this claim is in error and fails to take into account the recent ruling" by the Supreme Court in *Holmes v. South Carolina*, 547 U.S. 319 (2006).

*Holmes* was a death penalty case in which the defendant offered evidence that a third-party had committed the murder.  The excluded evidence consisted of the testimony of several witnesses who placed the third-party in the victim's neighborhood on the morning of the assault, as well as other witnesses who testified that the third-party had either acknowledged that the defendant was "innocent" or had actually admitted to committing the crimes.  *Id.* at 323.  The evidence had been excluded at trial under a South Carolina evidence rule that prohibited a defendant from introducing evidence of third-party guilt if the prosecution had introduced forensic evidence that, if believed, strongly supported a guilty verdict.  *Id.* at 329.  The Supreme Court held that the application of this rule violated the defendant's right to have a meaningful opportunity to present a complete defense.  *Id.* at 331.   In explaining the Court's unanimous decision, Justice Alito wrote, "[t]he point is that, by evaluating the strength of only one party's evidence, no logical conclusion can be reached regarding the strength of contrary evidence offered by the other side to rebut or cast doubt."  *Id.*  Alito also wrote that "well-established rule of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors . . . ."  *Id.* at 326.

In the instant case, consistent with *Holmes*, the evidence was excluded because its probative value was outweighed by certain other factors – it was hearsay, not subject to the rule of completeness, and it was cumulative.

**2.    Evidence That Petitioner's Friend Purchased Another Racially Derogatory Tee Shirt A Month After The Shooting.**

Petitioner alleges that he was denied a fair trial in violation of the Fourteenth Amendment when the trial court excluded evidence that Petitioner's friend purchased another racially derogatory tee shirt a month after the shooting.  The shirt purchased one month after the shooting was identical to the one purchased the day of the shooting.  *Answer*, Ex. E., pp. 3-6.  The shirt read "Wanted–skinny nigger 4 Harley belt drive."  *Id.*

The state appellate court upheld the trial court's exclusion of this evidence because it determined that the evidence was not relevant to the issue of whether Petitioner held racist beliefs.

The applicable federal law on this issue was clearly established when Petitioner was convicted.  A criminal defendant's right to present a defense is not without limits. "The defendant's presentation of evidence is constrained by the twin prongs of relevancy and materiality. Simply stated, a criminal defendant does not have a constitutional right to present evidence that is not relevant and not material to his defense.  *United States v. Solomon*, 399 F.3d 1231, 1239 (10th Cir. 2005) (citations omitted).

-11-

In this case, the record demonstrates that Petitioner participated in the purchase of the original tee shirt.  The trial court excluded evidence of the subsequent tee shirt purchase on relevancy grounds.  The trial court found that the subsequent purchase was not relevant to whether Petitioner participated in the original purchase.  This Court must be convinced that the trial court's application of the law was "objectively unreasonable." *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 566 n.4 (10th Cir. 2000), overruled on other grounds by *McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001).  The trial court's application of the law was not objectively unreasonable, and therefore not contrary to or an unreasonable application of *Solomon.*

Petitioner in his Objections again submits that "the Magistrate Judge's determination of this claim is in error and fails to take into account the recent ruling" by the Supreme Court in *Holmes.*  As stated above, in *Holmes*, the Supreme Court held that application of the state court evidence rule violated the defendant's right to have a meaningful opportunity to present a complete defense.  547 U.S. at 331.  Here, Petitioner argues that because he was not allowed to present evidence that his friend purchased another racially derogatory tee shirt a month after the shooting, he was denied an opportunity to present a complete defense, *i.e.* a defense of self-defense.  But as the court in *Holmes* stated, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors.  *Id.* at 326.  Thus, the trial court's decision to exclude on relevancy grounds is not contrary to or an unreasonable application of *Holmes*.

-12-

### 3.     Testimony Of Witnesses At The Mall Regarding The Demeanor Of The Crowd At The Mall.

Petitioner alleges that he was denied a fair trial in violation of the Fourteenth Amendment when the trial court excluded testimony of witnesses at the mall regarding the demeanor of the crowd at the mall.

The appellate court upheld the trial court's exclusion of this lay opinion testimony. The appellate court stated:

> Defendant also contends the court erred in excluding lay opinion testimony regarding the demeanor of the crowd at the mall where the shooting occurred.  We are not persuaded.
>
> Determination whether a witness may render a lay opinion pursuant to CRE 701 is a question for the trial court, and that determination is not subject to reversal unless clearly erroneous.
>
> Here, during direct examination of a defense witness, defense counsel sought to elicit the witness' opinion of what he perceived was going to happen based on the crowd's behavior, but the prosecution objected. Defense counsel proffered for the record that she intended to question the witness regarding "tone of the group, how the group was moving, things which are [the witness'] perceptions." Concluding that the witness' opinion relating to the crowd's behavior would not be helpful to the jury, the court sustained the objection. However, it did not prohibit the witness from testifying as to his objective observations of the crowd or its behavior.
>
> In *People v. Jones*, 907 P.2d 667 (Colo. App. 1995), a division of this court reversed the trial court's decision to exclude lay opinion testimony. However, in *Jones*, the division concluded that "the fact that the witness observed most of the altercation, and most particularly the beginning, establishe[d] an adequate foundation for her testimony summarizing or concluding as to what was happening."  The witness at issue did not observe the start of the confrontation here.  He came upon the scene toward its final stages, and thus, there was not a sufficient foundation for his opinion as to what he perceived was going to occur next.  Hence, we perceive no error in the court's ruling.

-13-

>    Additionally, inasmuch as several other witnesses, called by both the
>    prosecution and defense, testified as to their observations and the
>    demeanor of the crowd, the testimony sought by defense counsel from
>    this particular witness was cumulative.  Hence, the testimony was properly
>    excludable on this basis also.

*Answer*, Ex. D, pp. 6-8 (citations omitted).

"Habeas relief may not be granted on the basis of state court evidentiary rulings unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results."  *Mayes v. Gibson*, 210 F.3d 1284, 1293 (10th Cir. 2000); *see also Fox v. Ward*, 200 F.3d 1286, 1296-97 (10th Cir. 2000) (stating that, to justify habeas relief, a trial court's evidentiary error must be "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process").  As stated above, a defendant does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."  *Taylor v. Illinois*, 484 U.S. 400, 410 (1988).

As the Magistrate Judge made clear, the state courts' resolutions of these issues was not contrary to, nor did it involve and unreasonable application of, federal law as stated in *Taylor*.  (Doc. # 29 at 16.)

Again Petitioner in his Objections submits that "the Magistrate Judge's determination of this claim is in error and fails to take into account the recent ruling" by the Supreme Court in *Holmes*, i.e. that he was denied an opportunity to present a complete defense.  Petitioner, in conjunction with *Holmes*, relies on *People v. James*, which holds that "[e]vidence about gang culture is admissible if relevant to explain a

circumstance of the crime.  117 P.3d 91, 94 (Colo. App. 2004) (citing *People v. Atkins*, 844 P.2d 1196, 1202 (Colo. App. 1992).

However, as noted above, in *Holmes*, the Court stated that well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors.  *Holmes v. South Carolina*, 547 U.S. 319 (2006).  In this case, the state court found that the witness had not observed the beginning of the confrontation and, therefore, a sufficient foundation did not exist for his opinion as to what would occur next.  Petitioner does not dispute that factual determination made by the state court.  Additionally, the state court noted that several other witnesses had testified as to their observations and demeanor of the crowd, and the testimony sought by defense counsel from this particular witness was cumulative.  Hence, the testimony was properly excludable on this basis also.  For these reasons, *Holmes* is consistent with the state courts' determinations.

Based on the foregoing, the Court will not grant the Application as to Claim Two.

**B.      CLAIM FIVE: INEFFECTIVE ASSISTANCE OF COUNSEL**

In his Application, Petitioner alleges that trial counsel was ineffective based on failure to (a) object to the introduction of a racial slur printed on the tee shirt on First Amendment freedom of speech grounds; (b) object to the introduction of the tee shirt into evidence on the basis that the prosecution did not establish the offer of proof as to its admissibility; and (c) obtain an expert witness on gangs.  In his Objections, however, Petitioner accepts the Magistrate Judge's findings as to parts (a) and (b), and does not

object to their dismissal.  Therefore, this Court is not required to do a *de novo* review of these parts.  *Summer v. State of Utah*, 927 F.3d 1165, 1167 (10th Cir. 1991).  Finding no plain error, the Court will accept the Magistrate Judge's findings as to these parts. The Court will therefore only address part (c).

Petitioner presented part (c) to the state courts in his first motion for post-conviction relief.  Therefore, on this claim, Petitioner has exhausted his available state remedies.  Thus, Petitioner's application may be granted only if it is based on an underlying state court decision that (1) is "contrary to . . . clearly established Federal law, as determined by the Supreme Court," (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court," or (3) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); *see also Trice v. Ward*, 196 F.3d 1151, 1159 (10th Cir. 1999).

The applicable federal law on this issue was clearly established when Petitioner was convicted.  To establish that counsel was ineffective, Petitioner must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in a prejudice to his defense.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."  *Id.*  It is the

defendant's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances.  *See id.*  "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong."  *Boyd v.Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

Under the prejudice prong, Petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  In determining whether Petitioner has established prejudice, the Court must look at the totality of the evidence presented at trial not just the evidence that is helpful to Petitioner.  *See Boyd*, 179 F.3d at 914.

Finally, ineffective assistance of counsel claims are mixed questions of law and fact.  *See Strickland*, 466 U.S. at 698.  Conclusory allegations that counsel was ineffective are not sufficient to warrant habeas relief.  *See Humpreys v. Gibson*, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001).  If Petitioner fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claims must be dismissed.  *See Strickland*, 466 U.S. at 697.

In this case, the state appellate court upheld the trial court's denial of this as follows:

> Defendant next contends his trial counsel was ineffective by failing to call
> unnamed expert witnesses to testify that persons who, like defendant,
> wear sports clothing reputedly constituting gang colors are not necessarily
> gang members; defendant's turning his back on the victim and leaving the

mall would have been perceived as a sign of weakness, not what a rival gang member would do, which may have inflamed the victim; and the "mob mentality" at the time of the shooting pressured the victim to "save face" by acting on his earlier threats against defendant.  We are not persuaded.

Whether to call a particular witness, including an expert witness, is a tactical decision within the discretion of trial counsel.  Where expert testimony would have been of questionable benefit or would not have been supported by the evidence, failure to call the expert does not establish ineffective assistance of counsel. In reviewing Crim. P. 35(c) hearings that involved alleged ineffective assistance of counsel for failure to call a witness, divisions of this court have considered the absence of an offer of proof concerning who these potential witnesses might be, their willingness to testify (or their amenability to process), and the substance, credibility, or admissibility of their testimony.

Here, the description of expert testimony proferred [sic] in defendant's Crim. P. 35(c) motion does not meet these tests.

First, defendant's motion provides no information whatsoever as to the existence of experts willing to express the opinions suggested by defendant.  Nor does defendant indicate that he broached the possibility of expert testimony to his trial counsel.  Thus, given the proliferation of expert testimony, and the recognized risk that scientific assertions of dubious validity may be admitted, in our view a defendant must present more than unsubstantiated assertions concerning experts who may not exist or who, if identified, may not testify as hypothesized.

Second, at trial, defendant's theory was self-defense, defense counsel argued self-defense in closing, and the jury was so instructed.  Numerous witnesses described the actions of defendant, the victim, and their companions, including the fact that, despite defendant's clearly display-ing his pistol outside the mall, after briefly retreating the victim again approached him.  The People did not present expert testimony on gang activity, although one of their lay witnesses described gang colors and gang sign language, including defendant's clothing and his gestures.

Under these circumstances, we perceive no benefit to defendant, even assuming that experts would have been available to testify as he suggests.  The key to self-defense is what a defendant reasonably believes the victim is going to do.  Information about the victim, such

as prior criminality and propensity to violence, is only relevant if the
defendant asserts that he knew of the information and it played a role
in his decision to use force.

The hypothetical expert testimony would not have illuminated the
reasonableness of defendant's belief concerning the victim based on facts
that he knew about the victim. At most it would have shown the victim's
private motivations in continuing to approach defendant after display of the
pistol and his perceptions or misperceptions of defendant as a rival gang
member.

Accordingly, we conclude the trial court did not err in ruling that defendant
failed to show his counsel provided ineffective assistance for failing to call
expert witnesses.

*Answer*, Ex. J., pp. 4-7 (internal quotations and citations omitted.)

Petitioner in his Objections asks the Court to consider Judge Roy's state

appellate court dissenting opinion.  Judge Roy notes in his dissent:

Defendant asserted the affirmative defense of self-defense, which
required, among other things, that he was in imminent danger of serious
bodily injury and that the use of a degree of force less than deadly force
would be inadequate. To believe defendant's theory, the jury would have
to believe that the unarmed victim pursued a person he knew was armed
in a threatening manner.  Even when an angered person would be very
reluctant to do so.  Asking the jury to make that leap without some
understanding of the psychology of gangs may have hindered the
ability of defendant to pursue his affirmative defense.

There are cultures and subcultures, and street gangs are among them,
that have rules, attitudes, expectations and standards of conduct which
are not readily understood by the general population.  Expert testimony
can be of assistance to the jury in explaining the seemingly inexplicable
conduct.  See Generally, Masters v. People, 58 P.3d 979 (Colo. 2002)
(forensic psychologist permitted to testify as to relevancy of defendant's
fantasy sexual homicides to assist jury in understanding defendant's
motivation in committing sexual murder.  Indeed, in my experience, it is
not uncommon in cases involving gangs for the prosecution to call police
officers serving in gang units, or as investigating officers, to testify as
experts on the organization, practices, attitudes and activities of street

gangs.  See e.g., People v. Olguin, 31 Cal. App. 4th 1355, 37 Cal. Rptr. 2d
596 (1994).

Here defendant has alleged ineffective assistance of trial counsel because
counsel did not retain and call an expert on the psychology of street gangs
and their members.  The Majority dismisses the allegations because: (1)
the decision on whether to retain or call an expert is a tactical decision
within the discretion of trial counsel; (2) the testimony would be of
questionable benefit; and (3) defendant did not make an offer of proof in
his motion as to the identity and availability of such a witness and the
substance, credibility, and admissibility of the testimony.

At the outset, it is premature to conclude that the failure to retain and call
the expert witness was a matter of trial tactics because we do not know on
this record whether it was even considered. The failure to consider the use
of the evidence may not be tactics; it may be ineffective assistance of
counsel at best and incompetence of counsel at worst.  In my view, an
evidentiary hearing may be necessary to determine whether trial counsel
considered retaining such an expert, whether counsel discussed the
matter with defendant, and the basis for any decision not to retain and
call the expert witness.  Further it is also premature to conclude that the
testimony would be of questionable benefit because we do not know what
the testimony would be.

And finally, the majority relies on the absence of an offer of proof.
Defendant is incarcerated in the Department of Corrections for a term
of life without parole, was represented at trial by a public defender, and
is pro-se on this motion before the trial court and on appeal.  I am
comfortable in assuming that defendant is indigent and unable to retain
counsel. I am also comfortable in assuming that defendant, because of
his limited education, finances and access to the outside world, is unable
to identify, retain or even communicate with a potential expert witness.

See Applicant's Objections, Appendix A.

The Court has carefully considered Judge Roy's dissent, however, the Court

agrees with the majority opinion.  Given that the Court's judicial scrutiny of counsel's

performance must be highly deferential, Petitioner has not demonstrated that counsel's

performance fell below an objective standard of reasonableness nor that counsel's deficient performance resulted in prejudice.

Petitioner has not demonstrated that counsel's performance fell below an objective standard of reasonableness.  In order for counsel's performance to be constitutionally ineffective, it must have been completely unreasonable not merely wrong.  Counsel argued self-defense in closing and the jury was so instructed.  Lay witnesses testified as to gang colors and signs, including defendant's clothing and his gestures.  In these circumstances, failure to call an expert witness on gangs is not completely unreasonable.

Petitioner has also failed to demonstrate that counsel's performance resulted in prejudice.  In determining whether Petitioner has established prejudice, the Court must look at the totality of evidence at trial and not just the evidence that is helpful to Petitioner.  As was just stated above, counsel argued self-defense, the jury was instructed on self-defense, and there was lay witness testimony on gangs.  Looking at the totality of evidence, this Court finds no benefit to the Defendant by having an expert testify on gangs.

For the reasons, this Court finds that the appellate court's denial of this claim was not contrary to or an unreasonable application of *Strickland*, nor did it result in a decision that was based on an unreasonable determination fo the facts in light of the evidence.  Therefore, the Court will not grant the Application as to Claim Five.

**C.    CLAIM ONE: FAIR TRIAL IN VIOLATION OF THE FOURTEENTH
AMENDMENT**

Claim One alleges that Petitioner was denied a fair trial in violation of the

Fourteenth Amendment when the trial court allowed the tee shirt to come in as res

gestae evidence.  *Application*, p. 5.  Petitioner does not object to the Magistrate Judge's

recommendation on this claim, and therefore the Court is not required to do a *de novo*

review.  The Court agrees with the Magistrate Judge's recommendation, and therefore,

the Court will not grant the Application as to Claim One.

**D.    CLAIM THREE: IMPROPER SELF-DEFENSE INSTRUCTION**

Claim Three alleges that Petitioner's due process rights were violated when the

trial court refused his theory of the case instructions[1].  *Application*, p. 6.  Petitioner's

proposed theory of the case instruction stated:

> [Defendant] maintains that he is not guilty of first degree murder because
> he did not act after deliberation in causing the death of [the victim], but
> rather acted as any reasonable person would act under his circumstances
> and surroundings at that particular instant in time. Those circumstances
> include [defendant's] fear of [the victim], based on [the victim's] affiliation
> with the Crips street gang, the massive number of people who were with
> [the victim] and behaving threateningly toward [defendant] that day and
> the fact that [the victim] kept pursuing [defendant] even after [defendant]
> had displayed the gun.

*Answer*, Ex. D, p. 12.

---

[1]   Note that Petitioner in his Objections makes clear that he was not asking for relief
on grounds of the trial court's rejection of the initial aggressor jury instruction or the apparent
necessity instruction.  The Magistrate Jude found that Petitioner had not properly exhausted
these claims.

The trial court refused to give the instruction as tendered.  Instead, the court gave this instruction:

> It is [defendant's] theory of the case that he is not guilty of first degree murder because he did not act intentionally and after deliberation in causing the death of [the victim], but rather acted as any reasonable person would have, under his circumstances and surroundings at that particular instant in time.

*Id.*

In refusing Petitioner's tendered instruction, the trial judge stated:

> [T]he Court now would like to turn its attention to Defendant's Tendered Instruction 2, the defendant's theory of the case instruction. The Court did give or is going to give a theory of the case instruction which is instruction number 20. The Court did reject Defendant's Tendered Instruction Number 2 for several reasons.
>
> First of all, the instructions are the Court's statement of law to the jury, and instructions should not be given that in anyway invade the jury's province of making factual determinations. The instruction instructs the jury that the circumstances surrounding incident include Mr. Aviles' fear of Mr. Seekamp, Mr. Seekamp's affiliation with a street gang, the massive number of people, all of these things which are contested in this evidence and it is simply inappropriate for this Court to give this jury an instruction that suggest to them that the Court has made these findings of fact which they would then be bound by. Therefore, the Court rejected Defendant's Tendered Instruction 2.
>
> The Court requires that the instruction begin with the words of 'the defendant's theory of the case" so that the jury clearly understands that is what that instruction is intended to convey to them, and that it is not any direction to them as to how they should find in this case. To do otherwise I think would be confusing to the jury and therefore the Court will reject Defendant's Tendered Instruction 2 as well.

*Trial Transcript*, Vol. XIV, pp. 10-11.

Petitioner appealed the trial court's refusal of his theory of the case instruction.

*Answer*, Ex. A, pp. 25-29.  In upholding the trial court's ruling, the appellate court stated

that the trial court did not err in refusing the instruction because the tendered instruction was argumentative and called attention to specific points of evidence. *Id.* at Ex. D, pp. 12-13.

Petitioner asserts that his appellate counsel procedurally defaulted this claim because it was not submitted as a constitutional issue on direct appeal. *Traverse*, pp. 2, 4. Petitioner exhausted the ineffective assistance claim in the state courts. Therefore, he is not procedurally barred from asserting the same ineffective assistance in this Court as cause for defaulting this claim. Petitioner's application may be granted only if it is based on an underlying state court decision that (1) is "contrary to . . . clearly established Federal law, as determined by the Supreme Court," (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court," or (3) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); *see also Trice v. Ward*, 196 F.3d 1151, 1159 (10th Cir. 1999).

The applicable federal law on this issue was clearly established when Petitioner was convicted. As stated above, to establish that counsel was ineffective, Petitioner must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in a prejudice to his defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

In attempting to set aside a state conviction based on an erroneous jury instruction pursuant to § 2254, a petitioner has a heavy burden. *Maes v.Thomas*, 46 F.3d 979, 984 (10th Cir. 1995).  As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, "unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." *Long v. Smith*, 663 F.2d 18, 23 (6th Cir. 1981) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).  In *Henderson*, the Supreme Court stressed "[t]he question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" 431 U.S. at 154 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal."  The question . . .  is not whether the [challenged] instruction is "undesirable, erroneous, or even 'universally condemned,'" but whether the instruction so infected the trial that the resulting conviction violates due process. *Maes*, 46 F.3d at 984 (quoting *Henderson*, 431 U.S. at 154 (citations omitted).

Petitioner makes essentially the same arguments that he made in this motion to the state trial court.  *See District Court Record*, Vol. 2, Bates Nos. 000398-400. Petitioner argues that the theory of the case instruction as given, "remove[d] from the prosecution the necessity of proving the "intent/motive" element of the first degree murder charge."  *Id.* at Bates No. 000399.  However, as the Magistrate Judge made

clear, Petitioner's proposed second sentence contains statements of fact which are to be decided by the jury.  Morever, the instructions given to the jury did not remove the prosecution's burden of proving intent.  The trial court instructed the jury on the elements of the crime, including "intent"; the definition of "intent"; and the burden of the prosecution to prove intent beyond a reasonable doubt.  *See Trial Transcript*, pp. 26-27. For these reasons, Petitioner has failed to show that trial court's failure to submit his instruction so infected the trial that his conviction is in violation of due process.  As a result, Petitioner has failed to establish that his appellate counsel's failure to present this claim as a constitutional issue on appeal constitutes ineffective assistance or that he suffered resulting prejudice.

For the foregoing reasons, this Court finds no basis on which to grant the Application as to Claim Three.

**E.      CLAIM FOUR: INSUFFICIENT EVIDENCE FOR A FIRST DEGREE MURDER CONVICTION**

Claim Four alleges that the evidence was insufficient to convict Petitioner on a charge of first degree murder in violation of the Fourteenth Amendment.  *Application*, p. 6A.

Petitioner fairly presented and exhausted this claim in the state courts. Accordingly, Petitioner's application may be granted only if it is based on an underlying state court decision that (1) is "contrary to . . . clearly established Federal law, as determined by the Supreme Court," (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court," or (3) "resulted

in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); *see also Trice v. Ward*, 196 F.3d 1151, 1159 (10th Cir. 1999)

The standard for sufficiency of the evidence, which was clearly established when Petitioner was convicted, is set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). In *Jackson*, the Supreme Court held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*

This standard reflects the "longstanding principle that it is the jury's province to weigh the evidence and to draw reasonable inferences from testimony presented at trial." *Turrentine v. Mullin*, 390 F.3d 1181, 1197 (10th Cir. 2004).  The Court's review under this standard is " 'sharply limited' and a court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting *Wright v. West*, 505 U.S. 277, 296-97 (1992)).

Sufficiency of the evidence is a mixed question of law and fact. *Maynard v. Boone*, 468 F.3d 665, 673 (10th Cir. 2006).  Maynard further states, however, that the inquiry is not simply dealt with under 28 U.S.C. § 2254(d)(1) as *McKune* indicates, but requires applying both subsections (d)(1) and (d)(2) of § 2254 to determine whether the facts are correct and the law was properly applied to the facts. *Id*. (citing *Hamilton v. Mullin*, 436 F.3d 1181, 1194 (10th Cir. 2006); *Hale v. Gibson*, 227 F.3d 1298, 1335 n.17 (10th Cir. 2000) (noting precedent has investigated sufficiency of the evidence both as a legal question and as a factual question).  The Court must defer to any determination of factual issue by the state court due to the presumption of correctness afforded by § 2254(e). *Fields v. Gibson*, 277 F.3d 1203, 1221 (10th Cir. 2002).

In the instant case, the appellate court stated:

> Finally, we reject the defendant's contention that the evidence was insufficient to support the jury's guilty verdict for first degree murder . . . Section 18-3-102(1)(a), C.R.S. 1999, provides that "[a] person commits the crime of murder in the first degree if . . . [a]fter deliberation and with the intent to cause the death of a person other than himself, he causes the death of that person or of another person."  The term "after deliberation" means "not only intentionally but also that the decision to commit the act has been made after the exercise of reflection and judgment concerning the act.  An act committed after deliberation is never one which has been committed in a hasty or impulsive manner.  Section 18-3-101(3), C.R.S. 1999; see People v. Bartowsheski, 661 P.2d 235 (Colo. 1983).

> Here, according to the testimony of the prosecution's witnesses, defendant exited the mall and was followed by the victim.  He then pulled out a gun and brandished it in plain view of the victim, at which time the victim retreated.  The victim, undaunted, again pursued defendant, at which time defendant turned and shot the victim, killing him in view of more than fifteen witnesses.

-28-

> Viewing the evidence in the light most favorable to the prosecution, we conclude that it is sufficient to sustain the conviction of first degree murder.

*Answer*, Ex. D, pp. 13-14.

Petitioner argues in his Objections that Judge Roy's dissent, as set forth at pages 17 and 18 herein, speaks to this claim as well.  Judge Roy noted that the jury, due to possible ineffective assistance of counsel, was unable to discern why Petitioner acted the way he did.  Petitioner argues that he should have been found guilty of second degree murder rather than first degree murder.

This Court, however, as stated above, agrees with the majority state appellate court opinion.  Further, applying the "sharply limited" standard of review as put forth in *Jackson*, this Court finds that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Accordingly, the state court decision was not "contrary to" *Jackson* nor did it involve an "unreasonable application of" *Jackson.*

For the foregoing reasons, this Court finds no basis on which to grant the Application as to Claim Four.

**F.     CLAIM SIX: RIGHT TO EVIDENTIARY HEARING ON INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM AS WELL AS ASSISTANCE OF COUNSEL IN PURSUIT THEREOF**

Claim Six alleges that Petitioner's due process rights were violated because he was not provided with an evidentiary hearing and assistance of counsel for his first Rule 35(c) motion.  *Application*, p. 6B.  Pursuant to the Colorado Rules of Criminal

Procedure, a defendant seeking post-conviction relief is not entitled to an evidentiary hearing unless the motion, files, and the record clearly establish grounds for relief.  Rule 35(c)(3)(IV) and (V).  The state district court determined that Petitioner's claims did not have merit.  *Application*, third consecutive attachment.

In the instant case, Petitioner does not assert a violation of the constitution or federal law.  There is no federal constitutional right to post-conviction review in the state courts.  *See Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987).  A claim of constitutional error that "focuses only on the State's post-conviction remedy and not the judgment which provides the basis for [the applicant's] incarceration . . . states no cognizable federal habeas claim."  *Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998); *see also Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) (noting that applicant's challenge to state "post-conviction procedures on their face and as applied to him would fail to state a federal constitutional claim cognizable in a federal habeas proceeding").  Federal habeas review is limited to alleged violations of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).  Accordingly, Claim Six is not appropriate for habeas review.

Petitioner in his Objections argues that because he:

> "was prevented from raising his claim of ineffective assistance of counsel on his first appeal as a matter of right, and Colorado has recognized postconviction review as being a substantive right, [Petitioner] submits that he not only has a right to assistance of counsel, but to an evidentiary hearing on this claim of constitutional entitlement which the State of Colorado refuses to review on direct appeal."

*Objections*, p.15.

The Court finds this argument unavailing.  As stated above, federal habeas review is limited to alleged violations of the Constitution or laws or treaties of the United States.

For the foregoing reasons, this Court finds no basis on which to grant the Application as to Claim Six.

### IV.  CONCLUSION

For the foregoing reasons, IT IS ORDERED that the November 19, 2008 Recom-mendation of United States Magistrate Judge (Doc. # 29) is ACCEPTED and, for the reasons cited therein and in this order, Applicant's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. Section 2254, filed July 10, 2006 (Doc. # 2), is DENIED and this civil action is hereby DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that a certificate of appealability should not issue because Applicant has not made a substantial showing of the denial of a constitutional right.  "A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2255. Applicant is not entitled to a certificate of appealability.

DATED:  January   29   , 2010

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

-31-